**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MANUEL LAZO and ORALIA LAZO, | ) Case No.: 1:13-cv-02015 - AWI - JLT |
| Plaintiffs, | ) FINDINGS AND RECOMMENDATIONS |
| | ) GRANTING IN PART DEFENDANTS' MOTION |
| v. | ) TO DISMISS |
| | ) |
| SUMMIT MANAGEMENT COMPANY, | ) (Doc. 14) |
| LLC; CALIBER HOME LOANS, INC; and | ) |
| VERICREST OPPORTUNITY LOAN | ) |
| TRUST 2011-NPL1, | ) |
| | ) |
| Defendants. | ) |

Summit Management Company, LLL; Caliber Home Loans, Inc.; and Vericrest Opportunity Loan Trust 2011-NPL1 (collectively, "Defendants") seek dismissal of the complaint filed by Plaintiffs Manuel Lazo and Oralia Lazo pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 14.)  The matter was referred for the entry of Findings and Recommendations pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.  (*See* Doc. 16.)  Because the Court determined the matter was suitable for decision without oral argument, the motion is deemed submitted pursuant to Local Rule 230(g).  For the following reasons, the Court recommends Defendants' motion be **GRANTED IN PART.**

**I.      Factual and Procedural History**

Plaintiffs initiated this action by filing a complaint against Defendants Caliber Home Loans, Inc. ("Caliber"); Summit Management Company, LLC ("Summit"); and Vericrest Opportunity Loan Trust 2011-NPL1 ("Vericrest") alleging twenty-one causes of action based upon the foreclosure of the

mortgage on their primary residence.  (Doc. 1.)  Defendants filed a motion to dismiss on March 10, 2014, asserting Plaintiffs' complaint fails to state a claim upon which relief can be granted.  (Doc. 14.)  Defendants contend the complaint should be dismissed without leave to amend, because Plaintiffs cannot state facts sufficient to cure the defects of the complaint.  (*Id.*)

## II.      Background and Plaintiffs' Allegations

Plaintiffs allege they purchased real property identified as "Assessor's Parcel Number 515-573-12-00-5," commonly known as 4418 Serene Oak Drive in Bakersfield, California ("the Property") on May 20, 2004.  (Doc. 1 at 3-5, ¶¶ 5, 15.)  On November 1, 2005, Plaintiffs financed the Property with Ameriquest Mortgage Company, executing a note in the amount of $279,000.00.  (*Id.* at 5, ¶ 16.)  A Deed of Trust was recorded on the Property and assigned document number 0205303251 on November 1, 2005, "identifying Plaintiff as "Trustor," identifying Ameriquest Mortgage Company as "Lender," and identifying Town and Country Title Services, Inc. as the "Trustee."  (*Id.* at 5, ¶ 16.)

On April 12, 2007, S.A. Wileman, Sr., attorney for Ameriquest Mortgage Company, signed an Assignment Deed of Trust, which assigned the Property to Citifinancial Mortgage Company, Inc."  (Doc. 1 at 6, ¶ 17.)  The Assignment, Kern County Recorder document number 0206099770, included "the described deed of trust, together with certain note(s) described with all interest, all liens, and any right due or to become due thereon..."  (*Id.*)  Plaintiffs allege the Assignment "described the deed of trust (document 0205303251) but did not describe the 'note(s).'"  (*Id.*)

"Citifinancial Mortgage Company, Inc. merged out and became CitiMortgage, Inc." on July 1, 2006.  (Doc. 1 at 6, ¶ 18.)  Plaintiffs allege they were not notified of the merger, but received a letter dated June 11, 2008, which informed Plaintiffs the servicing of their loan would be transferred to CitiMortgage, effective July 1, 2008.  (*Id.* at 7, ¶ 19.)  According to Plaintiffs, "The problem with this is that 'CitiFinancial Mortgage Corporation' does not exist."  (*Id.*)  Further, Plaintiffs report that "[t]here is no known record of any subsequent assignment by either Citifinancial Mortgage Company, Inc. or CitiMortgage, Inc."  (*Id.* at 7-8, ¶ 20.)  Plaintiffs allege they later received notice that the servicing of their loan was being transferred from CitiMortgage to Defendant Vericrest effective October 20, 2010.  (*Id.* at 8, ¶ 21.)

Plaintiffs contend that CitiMortgage and Defendants Caliber and Vericrest agreed to provide

1   home mortgage loan modifications through the Home Affordable Modification Program ("HAMP").

2   (Doc. 1 at 15-16, ¶¶ 33-41.)  Plaintiffs allege that in January 2010, CitiMortgage provided Plaintiffs

3   with a HAMP Trial Payment Plan ("TPP"), under which Plaintiffs were required to make three

4   payments.  (*Id.* at 19, ¶ 48.)  Plaintiffs allege they made the payments, but "CitiMortgage failed to

5   provide a permanent loan modification and transferred the servicing rights to Defendant Caliber."  (*Id.*,

6   ¶ 49.)  Plaintiffs assert that CitiMortgage informed them that Caliber was servicing their loan and

7   "would honor the HAMP requirements since the TPP was completed."  (*Id.* at 18, ¶ 45.)  However,

8   Plaintiffs report that Caliber failed to honor the completed TPP.  (*Id.*, ¶¶ 45, 49.)

9        According to Plaintiffs, they submitted "at least three separate and complete loan modification

10  packages" to Caliber in late 2010 and 2011, each of which was denied.  (Doc. 1 at 18, ¶ 46; *id.* at 20, ¶

11  51.)  Caliber sent Plaintiffs an approval letter dated February 21, 2011, stating that their request for

12  modification would be approved if they made "a 'good faith' payment of $6,120.20."  (*Id.* at 20, ¶ 52.)

13  Plaintiffs allege this cannot be required under HAMP, and they did not make the payment.  (*Id.*)

14       Plaintiffs allege that "a Notice of Default and Election to Sell Under Deed of Trust was

15  recorded on the Property by 'Summit Management Company, LLC, as Agent for Beneficiary'" on

16  April 28, 2011.  (Doc. 1 at 8, ¶ 22.)  Plaintiffs assert that "there is no assigned beneficiary identified

17  and Defendant Summit is not the beneficiary."  (*Id.*)  Further, Plaintiffs report that Summit is registered

18  with California "as a foreign limited liability company from the State of Delaware," but a search of the

19  Delaware Division of Corporations reveals no such entity.  (*Id.* at 12, ¶¶ 29-30.)  Summit recorded a

20  second "Notice of Default and Election to Sell Under Deed of Trust" with the Kern County Recorder's

21  Office on May 11, 2011.  (*Id.* at 9, ¶ 23.)  Plaintiffs allege that the Notices of Default failed to identify

22  the beneficiary, and the only differences were that the default amount increased and the second notice

23  required document to be mailed to Vericrest, at the same address as Summit.  (*Id.*, ¶¶ 24- 25.)

24       Plaintiffs allege that a Substitution of Trustee was recorded on the Property on August 15,

25  2011, through which "Summit was substituted in place of Town and Country Title Services, Inc. as the

26  Trustee."  (Doc. 1 at 10, ¶ 26.)  Plaintiffs contend the document "contains a number of fatal defects

27  and its voidness can be determined on its face" because:

28       The Substitution of Trustee document states: "Whereas, the undersigned is the present
         Beneficiary under said Deed of Trust ... the undersigned hereby substitutes Summit

3

Management Company, LLC, as Trustee ...” The Substitution is signed on April 26, 2011, by Nivin Youssef, AVP, for Wells Fargo Delaware Trust Company, N.A., as Trustee for Vericrest Opportunity Loan Trust 2011-NPL1, as Attorney in Fact. Neither on the execution date of April 26, 2011, or on the recording date of August 16, 2011, was the Wells Fargo Delaware Trust Company, N.A., as Trustee for Vericrest Opportunity Loan Trust 2011- NPL1 the executing person or entity the 'present Beneficiary' under the Deed of Trust or Note. There is no Attorney in Fact document attached setting forth any such authority to act for the unidentified 'present Beneficiary' and there is an internal contradiction with the notary, Carrie Anderson, attesting that Nivin Youssef, AVP, came before her on August 16, 2011, when the Substitution of Trust is, on its face, dated April 26, 2011. Most importantly, there is no record that Wells Fargo Delaware Trust Company, N.A., as Trustee for Vericrest Opportunity Loan Trust 2011-NPL1 had authority to sign for the last known beneficiary following the assignment to Citifinancial Mortgage Company, Inc. or that Citifinancial Mortgage Company, Inc. assigned or otherwise transferred the Deed of Trust and/or Note to Wells Fargo Delaware Trust Company, N.A., as Trustee for Vericrest Opportunity Loan Trust 2011-NPL1.

(Doc. 1 at 10, ¶ 27.)

Plaintiffs allege that Summit recorded a Notice of Trustee's Sale with the Kern County Recorder's Office on August 11, 2011, "seeking an unpaid balance of $293,403.46." (Doc. 1 at 10-11, ¶ 28.) According to Plaintiffs, "Caliber owned, controlled, and otherwise directed the activities of Defendant Summit, ignoring independent legal entity status." (*Id.* at 14, ¶ 34.) Plaintiffs assert that Caliber "sought to defraud and hide the true ownership, operation, control, and to prevent liability for Defendant Summit and to protect their own misdeeds." (*Id.*) Further, Plaintiffs report Summit filed paperwork "in other legal proceedings," in which it was identified as a limited liability company formed in Delaware with Caliber is its sole member. (*Id.*, ¶ 35.)

Plaintiffs allege that on August 17, 2011, the Assignment of Deed of Trust was signed, and recorded on October 6, 2011, the same date as a Trustee's Deed Upon Sale was Recorded. (Doc. 1 at 11-12, ¶¶ 27, 30.) The Assignment of Deed of Trust assigned "the Deed of Trust and Note to Wells Fargo Delaware Trust Company, N.A., as Trustee for Vericrest Opportunity Loan Trust 2011- NPL1 stating "the undersigned corporation hereby grants, assigns, and transfers to ... All beneficial interest under that certain Deed of Trust ... together with the Promissory Note secured by said Deed of Trust..." (*Id., ¶* 30.)

Based upon the foregoing facts, Plaintiffs initiated this action by filing a complaint on December 10, 2013, asserting the following causes of action: (1) cancellation of instruments pursuant to Cal. Civ. Code § 3412, (2) quiet title, (3) wrongful foreclosure based on Cal. Comm. Code § 3301,

4

(4) wrongful foreclosure based on Cal. Civ. Code § 2934a(a)(1), (5) wrongful foreclosure based on Cal. Civ. Code § 2932.5, (6) violation of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, (7) breach of contract with servicer participation agreement or Making Home Affordable Plan, (8) violations of the federal and state Fair Debt Collections Acts, (9) breach of contract with the trial payment plan agreement, (10) promissory estoppel, (11) fraud based on false assignment, (12 and 13) intentional fraud based on Cal. Civ. Code § 2923.5(b), (14) to set aside trustee sale, (15) cancellation of trustee's deed, (16) slander of title, (17) civil conspiracy, (18) violations of Cal. Bus. & Prof. Code §17200, (19) imposition of constructive trust, (20) declaratory relief, and (21) accounting.

In response, Defendants filed the motion to dismiss now pending before the Court, seeking dismissal of all of Plaintiffs' claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 14.)

## III.    Legal Standards for a Motion to Dismiss

A Rule 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Dismissal under Rule 12(b)(6) is appropriate when "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  Thus, under Rule 12(b)(6), "review is limited to the complaint alone." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Supreme Court explained,

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (internal citations, quotation marks omitted). Further, allegations of a complaint must be accepted as true when the Court considers a motion to dismiss.  *Hospital Bldg. Co. v. Rex Hospital Trustees*, 425 U.S. 738, 740 (1976).

A court must construe the pleading in the light most favorable to the plaintiff, and resolve all

1  doubts in favor of the plaintiff.  *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).  "The issue is not

2  whether a plaintiff will ultimately prevail, but whether the claimant is entitled to officer evidence to

3  support the claims.  Indeed it may appear on the face of the pleadings that a recovery is very remote

4  and unlikely but that is not the test."  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  However, the

5  Court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to

6  plead sufficiently all required elements of a cause of action."  *Student Loan Marketing Assoc. v.*

7  *Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  Leave to amend should not be granted if "it is clear that

8  the complaint could not be saved by an amendment."  *Livid Holdings Ltd. v. Salomon Smith Barney,*

9  *Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

10  **IV.      Requests for Judicial Notice**

11         Defendants filed a request for judicial notice in conjunction with the motion to dismiss on

12  March 10, 2014. (Doc. 15.)  Specifically, Defendants seek judicial notice of the following documents:

13  (1) the Deed of Trust recorded in the official records of Kern County as Instrument No. 0205303251,

14  (2) the Assignment of Deed of Trust recorded in the official records of Kern County as Instrument No.

15  02060997, (3) a letter to Plaintiffs dated June 11, 2008, (4) a letter to Plaintiffs dated October 20, 2010,

16  (5) the Notice of Default recorded in the official records of Kern County as Instrument No.

17  0211055277, (6) the Notice of Default recorded in the official records of Kern County as Instrument

18  No. 0211061330, (7) the Notice of Trustee's Sale recorded in the official records of Kern County as

19  Instrument No. 0211104032, (8) the Trustee's Deed Upon Sale recorded in the official records of Kern

20  County as Instrument No. 000211130634; (9) the Substitution of Trustee recorded in the official

21  records of Kern County as Instrument No. 0211104031; and (10) the California Secretary of State

22  Internet print-out regarding Summit Management Company, LLC.  (Doc. 15 at 2.)  Plaintiffs do not

23  oppose the requests for judicial notice.

24         In considering a motion to dismiss, the Court may consider material outside the pleadings that is

25  properly the subject of judicial notice.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir.

26  2001); *MGIC Indemnity Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).  The Court may take

27  judicial notice of a fact that "is not subject to reasonable dispute because it (1) is generally known

28  within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from

sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. In addition, the Court also may take judicial notice of material incorporated by reference into the complaint without converting the motion to dismiss into a motion for summary judgment. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010); *Intri-Plex Technologies, Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007). Documents are incorporated into the complaint by reference "in situations where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance." *Coto Settlement*, 593 F.3d at 1038; *see also United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011).

Here, each of the documents identified above are incorporated into Plaintiffs' complaint by reference, and several are attached as exhibits thereto. In addition, the recorded documents are matters of public record, certified and maintained by the Kern County Recorder's Office. Accordingly, Defendants' unopposed request for judicial notice is **GRANTED**.

**V.      Discussion and Analysis**

As an initial matter, the parties disagree regarding which causes of action are subject to the heightened pleading requirements of Rule 9(b), which requires a plaintiff to state "with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). In other words, the plaintiff must articulate the "who, what, when, where, and how" of the fraud alleged. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009). Defendants argue the entire complaint is subject to Rule 9(b), because "[t]he entire premise . . . is that Defendants and each of them fraudulently conveyed a beneficial interest in the subject Dead of Trust and then wrongfully foreclosed on and sold the property." (Doc. 14-1 at 11.) Defendants contend that "each cause of action is based on the alleged fraud" and "contain conclusions of law that fraudulent conduct occurred without alleging specific facts." (*Id.*) On the other hand, Plaintiffs assert that Rule 9(b) applies only to the eleventh, twelfth, and thirteenth causes of action for fraud. (Doc. 20 at 11.)

Importantly, when a plaintiff alleges that the defendants engaged in "a unified course of fraudulent conduct" and relies upon that conduct to support a claim, the plaintiff's claim is "grounded in fraud," and must satisfy the particularity requirement of Rule 9. *Kearns v. Ford Motor Co.*, 567 F.3d

1120, 1125 (9th Cir. 2009).  Thus, the heightened pleading standards may be applied to factual allegations of a complaint even where fraud is not an element of a claim.  *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003).  Because Plaintiffs' claims for cancellation of instruments, quiet title, violation of RICO, civil conspiracy, the Rosenthal Act and violation Cal. Bus. & Prof. Code § 17200, are based upon alleged fraudulent conduct, the standards of Rule 9(b) are applicable.  *See e.g., Smith v. Bank of Am. Corp.*, 485 Fed. Appx. 749 (6th Cir. 2012) (applying Rule 9(b) to a claim for quiet title where the plaintiffs alleged the defendant "committed fraud, in one form or another, leading up to the foreclosure proceeding, and their quiet title claim flows from that conduct); *Lanini v. JPMorgan Chase Bank*, 2014 U.S. Dist. LEXIS 47348 at *33 (E.D. Cal. Apr. 4, 2014) (dismissing the plaintiffs' claim for a violation of Cal. Bus. & Prof. Code §17200 for failure to meet the Rule 9(b) pleading requirements); *Boyter v. Wells Fargo Bank, N.A.*, 2012 WL 1144281 at *4 (N.D. Cal. Apr. 4, 2012) ("to the extent that plaintiff relies on fraud as a basis for his cancellation of instruments claim, the claim must be plead with sufficient particularity").

        To avoid dismissal for failure to meet the heightened pleading standards under Rule 9(b), "[a] complaint would need to state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation."  *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004).  "For corporate defendants, a plaintiff must allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Flowers v. Wells Fargo Bank, N.A.*, 2011 WL 2748650, at *6 (N.D. Cal. July 13, 2011).  If allegations of fraud do not meet the heightened pleading standard, the "averments . . . should be disregarded, or stripped from the claim for failure to satisfy Rule 9(b)." *Kearns*, 567 F.3d at 1124 (quotations omitted).

        **A.    Tender and Standing**

        Defendants assert that Plaintiffs complaint fails because they do not allege tender.  (Doc. 14-1 at 11.)  "A tender is an offer of performance made with the intent to extinguish the obligation." *Arnolds Mgmt. Corp. v. Eischen*, 158 Cal. App. 3d 575, 580 (1984) (internal citations and quotations omitted). "A tender must be one of full performance . . . and must be unconditional to be valid." *Id.*

        Under California law, the "tender rule" requires that an action to set aside a sale "for

8

irregularities in sale notice or procedure" must be "accompanied by an offer to pay the full amount of the debt for which the property was security." *Arnolds Management Corp. v. Eischen*, 158 Cal. App. 3d 575, 578 (1984) (citing *Karlsen v. American Savings and Loan Association*, 15 Cal.App.3d 112, 117 (1971)).  Thus, any "cause of action 'implicitly integrated' with the irregular sale fails unless the trustor can allege and establish a valid tender."  *Id.* at 589. (citing *Karlsen*, 15 Cal.App.3d at 121.) The Third District Court of Appeal explained:

> [G]enerally "an action to set aside a trustee's sale for irregularities in sale notice or procedure should be accompanied by an offer to pay the full amount of the debt for which the property was security." . . . . This rule . . . is based upon the equitable maxim that a court of equity will not order a useless act performed. . . . "A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust." . . . The rationale behind the rule is that if plaintiffs could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the plaintiffs.

*FPCI RE-HAB 01 v. E & G Investments, Ltd.*, 207 Cal.App.3d 1018, 1021(1989) (citations omitted). The "tender rule" is meant to prevent courts "from uselessly setting aside a foreclosure sale on a technical ground when the party making the challenge has not established his ability to purchase the property." *Keen v. Am. Home Mortg. Servicing, Inc.*, 664 F. Supp. 2d 1086, 1101 (E.D. Cal. 2009).

Defendants contend, "To have proper standing to pursue an action to set aside a foreclosure sale, i.e., to cancel a voidable sale under a deed of trust, and for related damages, Plaintiffs must have tendered the undisputed amount owed on the loan, and must show their ability to make said payment." (Doc. 14-1 at 11, citing *Karlsen v. American Savings and Loan Assoc.*, 15 Cal.App.3d 112 (1971)). Defendants assert, "California Courts have expanded the application of the tender rule to 'any cause of action' that is based upon allegations of wrongful foreclosure or that seeks redress from foreclosure." (*Id.* at 11, citing, *e.g.*, *Abdallah v. United Sav. Bank*, 43 Cal.App.4th 1101, 1109 (1996); *United States Cold Storage v. Great W. Sav. & Loan Ass'n*, 165 Cal.App.3d 1214, 1225 (1985)).  Because Plaintiffs do not "allege that they were reading, willing, and able to tender the entire amount due on the loan obligation," Defendants conclude that "the Complaint fails as a matter of law."  (*Id.* at 12.)

In response, Plaintiffs assert that tender was not required because the trustee sale was void. (Doc. 20 at 12, citing *Glaski v. Bank of Am., N.A.*, 218 Cal.App.4th 1078, 1100 (2013); *Dimick v. Emerald Props.,* 81 Cal.App.4th 868, 877-78 (2000); *Intengan v. Bank of Am.*, 214 Cal.App.4th 1047,

1053-54 (2013); *Pfeifer v. Countrywide Home Loans*, 211 Cal.App.4th 1250, 1281 (2012)).  In *Glaski*, the Fifth District Court of Appeal "reject[ed] the view that a borrower's challenge to an assignment must fail once it is determined that the borrower was not a party to, or third party beneficiary of, the assignment agreement."  *Id.*, 218 Cal.App.4th at 1095.  The court found that a borrower "may challenge the securitized trust's chain of ownership by alleging the attempts to transfer the deed of trust to the securitized trust (which was formed under New York law) occurred after the trust's closing date."  *Glaski*, 218 Cal. App. 4th at 1083.  Plaintiffs argue Court should follow *Glaski* and find wrongful securitization of the loan rendered the deed of trust invalid.  (Doc. 20 at 13-14, citing *Kling v. Bank of Am.*, *N.A.,* 2013 WL 7141259 (C.D. Cal. Sept. 4, 2013).

   Significantly, however, a majority of California courts have declined to follow *Glaski*, and have instead followed the Fourth District Court of Appeal's conclusion that a borrower is "an unrelated third party to the alleged securitization and any other subsequent transfers of the beneficial interest under [a] promissory note"and as such "lacks standing to enforce any agreements." *Jenkins v. JP Morgan Chase Bank, N.A.*, 216 Cal.App.4th 497, 515 (2013).  In *Jenkins*, the court explained: "[E]ven if the asserted improper securitization (or any other invalid assignments or transfers of the promissory note subsequent to her execution of the note . . .) occurred, the relevant parties to such a transaction were the holders (transferors) of the promissory note and the third party acquirers (transferees) of the note." *Id.*, 216 Cal.App.4th 497 at 515.  This Court has consistently followed the reasoning of *Jenkins*, and rejected *Glaski*.  *See e.g., Lanini v. JPMorgan Chase Bank,* 2014 WL 1347365, at *5 (E.D. Cal. Apr. 4, 2014); *Flores v. EMC Mortg. Co.,* 2014 WL 641097, at *6 (E.D. Cal. Feb. 18, 2014).  In *Flores*, the Court explained:

> *Glaski* addressed neither federal pleading requirements nor a F.R.Civ.P. 12(b)(6) challenge. *Glaski* addressed New York trust law, which plaintiffs fail to demonstrate applies here. Of key importance, numerous courts disagree with and refuse to follow *Glaski*, including this Court. *See Snell v. Deutsche Bank Nat. Trust Co.,* 2014 U.S. Dist. LEXIS 11122, 2014 WL 325147, at *5 (E.D. Cal. 2014) ("Until either the California Supreme Court, the Ninth Circuit, or other appellate courts follow *Glaski* or address the discrepancy between *Glaski* and *Jenkins*, this Court will continue to follow the *Jenkins* rule. Therefore, Plaintiff's claims based on alleged violation of the PSA [pooling and servicing agreement] are not viable"); *Newman v. Bank of New York Mellon*, 2013 U.S. Dist. LEXIS 147562, 2013 WL 5603316, at *3, n. 2 (E.D. Cal. 2013) "the court held that a borrower like Newman has standing to assert a violation of a PSA. However, no courts have yet followed *Glaski* and *Glaski* is in a clear minority on the issue. Until either the California Supreme Court, the Ninth Circuit, or other appellate courts follow *Glaski*, this Court will continue to follow the majority rule").

*Flores*, 2014 WL 641097, at *6.

"The rules which govern tenders are strict and are strictly applied." *Nguyen v. Calhoun*, 105 Cal.App.4th 428, 439 (2003). "The tenderer must do and offer everything that is necessary on his part to complete the transaction, and must fairly make known his purpose without ambiguity, and the act of tender must be such that it needs only acceptance by the one to whom it is made to complete the transaction." *Gaffney v. Downey Savings & Loan Assoc.*, 200 Cal.App.3d 1154, 1165 (1988). Because Plaintiffs fail to allege tender, their claims for wrongful foreclosure, quiet title, to set aside the trustee sale, slander of title, and cancellation of title fail. *See Karlsen*, 15 Cal.App.3d at 117; *United States Cold Storage v. Great Western Savings & Loan Assn.,* 165 Cal.App.3d 1214, 1224 (1985) ("It would be futile to set aside a foreclosure sale on the technical ground that notice was improper, if the party making the challenge did not first make full tender and thereby establish his ability to purchase the property").

Moreover, Plaintiffs lack standing because, as borrowers, they were not parties to the challenged assignments and the assignments were not made for their benefit. *See Jenkins*, 216 Cal.App.4th at 515; *see also Fontenot v. Wells Fargo Bank.*, 198 Cal.App.4th 256, 272-73 (2011) (stating the borrower had no cause of action for irregularities in the assignment process); *Gieseke v. Bank of Am., N.A.*, 2014 WL 718463, at *5 (N.D. Cal. Feb. 23, 2014) (holding the plaintiff's claims for wrongful disclosure, quiet title, slander of title, and cancellation of instruments could be dismissed for lack of standing because the plaintiff was a third-party borrower). Consequently, Plaintiffs lack standing to proceed on causes of action premised on irregularities in the assignment and securitization of their loan, and the Court recommends Defendants' motion, on these grounds, be **GRANTED**.

**B.    Wrongful Foreclosure Claims**

Plaintiffs allege three causes of action for wrongful foreclosure, based upon Cal. Commercial Code § 3301, Cal. Civ. Code § 2934a(a)(1), and Cal. Civ. Code § 2932.5. (*See* Doc. 1 at 26-31, ¶¶ 81-120.) Defendants argue the claims should be dismissed because "Plaintiffs make broad sweeping allegations that are unsupported by facts and misinterpret the applicable law." (Doc. 14-1 at 7.)

1.    Deeds of trust and the foreclosure process

A loan for real property "generally involves two documents, a promissory note and a security

11

instrument." *Alliance Mortgage Co. v. Rothwell*, 10 Cal. 4th 1226, 1235 (1995).  The security instrument— most commonly a deed of trust— "entitles the lender to reach some asset of the debtor if the note is not paid."  *Id.; see also Bartold v. Glendale Federal Bank*, 81 Cal.App.4th 816, 821 (2000) (explaining that the financing "is generally accomplished in California through a deed of trust").  If borrower defaults and the deed of trust contains a power of sale clause, then the lender may initiate foreclosure.  *McDonald v. Smoke Creek Live Stock Co.*, 209 Cal. 231, 236-37 (1930).

The foreclosure process may be conducted by a "trustee, mortgagee or beneficiary or any of their authorized agents."  Cal. Civ. Code § 2924(a)(1).  Those "authorized to record the notice of default or the notice of sale" include "an agent for the mortgagee or beneficiary, an agent of the named trustee, any person designated in an executed substitution of trustee, or an agent of that substituted trustee."  Cal. Civ. Code § 2924b(b)(4).  Pursuant to California law, foreclosure is the "only. . . form of action for the recovery of any debt or the enforcement of any right secured by a mortgage or deed of trust.  *Alliance Mortgage Co.,* 10 Cal.4th at 1236 (citing Cal. Code Civ. Pro. §§ 725a, 726(a)).

### 2.    California Commercial Code § 3301

Plaintiffs allege that "California Commercial Code § 3301 specifically identifies the persons who are entitled to enforce a security interest, such as instituting a foreclosure sale under a Deed of Trust."  (Doc. 1 at 26, ¶ 82.)  According to Plaintiffs, the defendants lacked standing to foreclose, and "no Defendant is a 'person[] entitled to enforce' the security interest on the Property, as that term is defined in California Commercial Code § 3301."  (*Id.* ¶ 83.)

Importantly, "[t]he comprehensive statutory framework established to govern nonjudicial foreclosure sales is intended to be exhaustive."  *Moeller v. Lien*, 25 Cal.App.4th 822, 834 (1994); *see also I.E. Assoc. v. Safeco Title Ins. Co.*, 39 Cal.3d 281, 285 (1985) (explaining the provision of Civil Code §§ 2924, et seq., "cover every aspect of exercise of the power of sale contained in a deed of trust").  Consequently, this Court has determined that "section 3301 . . . does not govern nonjudicial foreclosures, which [are] governed by California Civil Code section 2924." *Castaneda v. Saxon Mortg. Servs.*, 687 F. Supp. 2d 1191, 1201 (E.D. Cal. 2009); *see also Valenzuela v. Wells Fargo Bank*, 2014 U.S. Dist. LEXIS 10449, at *28 (E.D. Cal. Jan. 28, 2014) ("section 3301 does not apply to nonjudicial

1  foreclosure"). Therefore, the Court recommends this Plaintiffs' third cause of action for "wrongful

2  disclosure based on California Commercial Code § 3301" be **DISMISSED** without leave to amend.

3                                      3.      Cal. Civ. Code § 2932.5

4         Plaintiffs allege Defendants failed to comply with the provisions of § 2923.5, which provides:

5  "Where a power to sell real property is given to a mortgagee, or other encumbrancer, in an instrument

6  intended to secure the payment of money, the power is part of the security and vests in any person who

7  by assignment becomes entitled to payment of the money secured by the instrument. The power of sale

8  may be exercised by the assignee if the assignment is duly acknowledged and recorded." (Doc. 1 at 29,

9  ¶ 103-106.)

10        In *Calvo v. HSBC Bank USA, N.A.*, the California Court of Appeal explained that "[i]t has been

11 established since 1908 that this statutory requirement that an assignment of the beneficial interest in a

12 debt secured by real property must be recorded in order for the assignee to exercise the power of sale

13 applies only to a mortgage and *not to a deed of trust*." *Id.*, 199 Cal.App.4th 118, 122 (2011) (emphasis

14 added). Further, the Ninth Circuit has determined that "California Civil Code section 2932.5 does not

15 apply to deeds of trust." *Caballero v. Bank of America*, 468 Fed. Appx. 709, 710 (9th Cir. 2012).

16 Moreover, California's nonjudicial foreclosure statutes do not require a recording of assignments of

17 interests in deeds of trust prior to foreclosure. *See Parcray v. Shea Mortgage,* 2010 U.S. Dist. Lexis

18 40377, at *31 (E.D. Cal. Apr. 23, 2010) ("There is no requirement under California law for an

19 assignment to be recorded in order for an assignee beneficiary to foreclose"); *Caballero v. Bank of*

20 *America,* 2010 WL 4604031, at *3 (N.D. Cal. 2010) ("§ 2932.5 does not require the recordation of an

21 assignment of a beneficial interest for a deed of trust, as opposed to a mortgage").

22        Because Cal. Civ. Code § 2932.5 is inapplicable and the nonjudicial statutes do not require a

23 recording, the Court recommends Plaintiffs' fifth cause of action be **DISMISSED** without leave to

24 amend.

25                                      4.      Prejudice and wrongful foreclosure

26        "[T]o maintain a wrongful foreclosure claim, Plaintiffs must allege that 1) Defendants caused

27 an illegal, fraudulent, or willfully oppressive sale of the property pursuant to a power of sale in a

28 mortgage or deed of trust; (2) Plaintiffs suffered prejudice or harm; and (3) Plaintiffs tendered the

                                                    13

amount of the secured indebtedness or were excused from tendering. *Nugent v. Fed. Home Loan Mortgage Corp.*, 2013 WL 1326425, at *7 (E.D. Cal. Mar. 29, 2013) (citing *Lona v. Citibank, N.A.*, 202 Cal.App.4th 89, 112 (2011)).

Importantly, "mere irregularities" in the foreclosure process are insufficient to show prejudice. *Fontenot v. Wells Fargo Bank.*, 198 Cal.App.4th 256, 272 (2011) (citing *Meux v. Trezevant*, 132 Cal. 487, 490, 64 P. 848 (1901)). Further, California courts have determined plaintiffs are unable to show prejudice when the borrowers were in default and the allegedly improper assignment does not affect the borrower's ability to pay, or the borrower is unable to allege that the original lender would not have foreclosed. *See, e.g., Siliga v. Mortg. Elec. Registration Sys., Inc.*, 219 Cal.App.4th 75, 85 (2013) ("The assignment of the deed of trust and the note did not change [plaintiffs'] obligations under the note, and there is no reason to believe that . . . the original lender would have refrained from foreclosure in these circumstances"); *Herrera v. Fed. Nat'l Mortg. Assoc.*, 205 Cal.App.4th 1495, 1508 (2012) (finding no prejudice where the borrowers defaulted on the loan and the borrowers failed to tender or cure default); *Fontenot*, 198 Cal.App.4th at 272 (finding no prejudice where borrower was in default and did not allege that transfer of note interfered with borrower's ability to pay). Here, it is undisputed that Plaintiffs were in default, and there are no facts supporting a determination the original lender would have refrained from foreclosure. Accordingly, Plaintiffs do not allege prejudice,[1] and their third, fourth, and fifth causes of action for wrongful foreclosure should be **DISMISSED** without leave to amend.

### C. Cancellation of Instruments

Plaintiffs seek the cancellation of instruments pursuant to Cal. Civ. Code § 3412, which provides for the cancellation of a written instrument when there is "reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable." "To plead a cause of action for cancellation of instrument, plaintiff must show that he will be injured or prejudiced if the instrument is not cancelled, and that such instrument is void or voidable." *Zendejas v. GMAC Wholesale Mortg. Corp.*, 2010 WL 2629899, at *7 (E.D. Cal. June 29, 2010).

---

[1] In addition, as noted above, there is no showing Plaintiffs made a full tender of payment.

According to Plaintiffs, "[a]ll of Defendants' actions are predicated on a void assignment of the Note and Deed of Trust against the Property." (Doc. 1 at 21, ¶ 54.)  Therefore, Plaintiffs "seek[]to cancel all foreclosure related documents recorded, including the Notices of Default, the Substitution of Trustee, the Notice of Sale, the 2nd Assignment to Defendant Caliber's predecessor, and the Trustee's Deed Upon Sale." (*Id.* at 23, ¶ 63.) On the other hand, Defendants assert that this action must fail because "a threshold issue which the parties must first address, before considering the merits of the action to cancel a sale, is the 'valid and viable tender of payment' of the debt owed." (Doc. 14-1 at 11, quoting *Napue v. Gor-Mey West, Inc.*, 175 Cal. App.3d 608, 621(1985)).

As addressed above, Plaintiffs have not alleged tender.  However, even if Plaintiffs alleged tender of payment, it appears the action would fail because Plaintiffs are unable to show prejudice.  *See Dick v. Am. Home Mortg. Servicing, Inc.*, 2014 WL 172537 at *5 (E.D. Cal. Jan. 15, 2014) (finding the "plaintiffs cannot allege prejudice here because they cannot plausibly allege that the improper assignment affected their inability to pay their debt" and dismissing the cancellation of instruments claim with prejudice); *Wilson v. Household Fin. Corp.*, 2013 WL 1310589, at *8 (E.D. Cal. Mar. 28, 2013) (explaining that "a party is unable to show prejudice "if he is unable to pay his reasonable indebtedness). Accordingly, the Court recommends Plaintiffs' first cause of action for the cancellation of instruments be **DISMISSED** without leave to amend.

### D.    Quiet Title

An action to quiet title is brought "to establish title against adverse claims to real or personal property or any interest therein."  Cal. Civ. Proc. Code § 760.020; *see also Peterson v. Gibbs*, 147 Cal. 1, 81 P. 121, 123 (Cal. 1905) (quiet title is brought "to settle and determine, as between the parties, all conflicting claims to the property in controversy, and to decree to each such interest or estate therein as he may be entitled to").  To establish a claim for quiet title, Plaintiffs must file a verified complaint that includes:  (a) a description of the property; (b) plaintiffs' title as to which a determination is sought; (c) the adverse claims to the title; (d) the date as to which the determination is sought; and (e) a prayer for the determination of title. Cal. Civ. Proc. Code § 761.020.

A plaintiff must pay or offer to pay any outstanding debts on the subject property maintain an action to quiet title.  *Hamilton v. Bank of Blue Valley*, 746 F. Supp. 2d 1160, 1177-78 (E.D. Cal. 2010)

15

1    (citing *Abdallah v. United Savings Bank*, 43 Cal.App.4th 1101, 1109 (1996); *Sipe v. McKenna*, 88

2    Cal.App.2d 1001, 1006, 200 P.2d 61 (1948)).  As discussed above, Plaintiffs do not allege that they

3    have met, or are able to meet, the financial debts on the Property.  As such, their claim for quiet title

4    fails, and Defendants motion to dismiss this claim should be **GRANTED**.

5          **E.    Fraud**

6          Plaintiffs' eleventh, twelfth, and thirteenth causes of action are for fraud related to the

7    Assignment and Notices of Default.  (Doc. 1 at 41-47, ¶¶ 176-214.)  Defendants assert that "Plaintiffs

8    fail to provide specific facts regarding any alleged fraud . . . and then ignore the proof of no such

9    wrongdoing in the very documents submitted as exhibits to their own complaint."  (*Id.* at 14-1.)

10                 1.    Elements of Fraud

11         Under California law, Plaintiffs must allege the following to support a claim of fraud: "a false

12   representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages." *Moore v.*

13   *Brewster*, 96 F.3d 1240, 1245 (9th Cir. 1996); *see also* Cal. Civ. Code § 1572.  The burden to establish

14   fraud is "heavy," *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1444 (9th Cir. 1990), because "when

15   fraud is alleged, 'a party must state with particularity the circumstances constituting fraud.'" *Kearns*,

16   567 F.3d at 1124 (quoting Fed. R. Civ. P. 9(b)).

17                 2.    Claim 11- Fraud against Defendant Caliber

18         Plaintiffs allege that "Caliber caused its employee, Adam Roesner, to execute the assignment

19   dated August 17, 2011."  (Doc. 1 at 41, ¶ 177.)  According to Plaintiffs, Ms. Roesner was "the

20   Assistant Vice President for Vericrest Financial, Inc. (predecessor to Defendant Caliber) and not in

21   any way an agent, employee, or officer of" "the statutory trusts, entitled 'LSF7 Bermuda NPL I as

22   Trustee for Vericrest Opportunity Loan Trust 2011-NPL1.'"  (*Id.*, ¶¶ 178-79.)  Plaintiffs allege Caliber

23   intended to deceive them, and "knew . . . that Mr. Roesner was not signing on behalf of the statutory

24   trusts, knew that the authority presented by the signature was false and proceeded to utilize to gain an

25   advantage over others and Plaintiff."  (*Id.* at 42, ¶ 183-84.)  According to Plaintiffs, Mr. Roesner's

26   "signature was submitted to assign documents, record the assignment, and to otherwise justify the

27   ability to foreclose on the Property on behalf of Defendant Caliber.'  (*Id.* at 41, ¶ 181.) Plaintiffs allege

28   that they "relied on this act to [their] detriment."  (*Id.* ¶ 182.)

Notably, Plaintiffs do not allege any facts regarding when they learned of the alleged misrepresentation to support a conclusion that they relied upon the allegedly false representation. Indeed, Plaintiffs fail to allege any actions taken in reliance on the assignment, whether it was false. Further, Plaintiffs were in default prior to the recording of the assignment, and the facts do not support a finding that Plaintiffs suffered damages based upon the Assignment. Defendants foreclosed on Plaintiffs because of they were in default, not because of Roesner's signature on the Assignment. Because Plaintiffs fail allege facts sufficient under Rule 9(b) to support a claim of fraud by Caliber related to the Assignment recorded on October 6, 2011, the Court recommends the claim be **DISMISSED** with leave to amend.

### 3.    Claims 12 and 13- Fraud against Defendants Summit and Caliber

Plaintiffs assert the Notices of Default recorded on April 28, 2011 and May 11, 2011 failed to comply with Cal. Civ. Code § 2923.5 requirements[2], and Summit and Caliber knew the documents asserted "false compliance" by Robbi Denson.  (Doc. 1 at 43-47, ¶¶ 189-214.)  According to Plaintiffs, the declarations in the Notices of Default were "false and impossible to be generated" because Summit and Caliber "knew that there had been no[] purported assignment of the Property."  (*Id.* ¶¶ 194, 208.)  According to Plaintiffs, the defendants "intended to deceive" and "Plaintiff[s] relied on this act to their detriment."  (*Id.*, ¶¶ 197, 209.)

Again, Plaintiffs claims for fraud related to the Notices of Default fail to meet the heightened standard of Rule 9(b).  Plaintiffs fail to allege any acts they took in reliance on the Notices of Default, or damages caused by the reliance.  Consequently, the Court recommends the twelfth and thirteenth causes of action be **DISMISSED** with leave to amend.

### F.    Violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act

Plaintiffs allege Defendants are liable for a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), which allows a private citizen to recover damages for conduct of an

---

[2] Cal. Civ. Code § 2923.5 governs notice requirements to borrowers and was intended "to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure."  *See* Cal. Civ. Code § 2923.5(a)(2).  To the extent that Plaintiffs' fraud claim is an attempt to re-frame a claim for failure to comply with the notice requirements, the claim must fail.  The only remedy available for a violation of § 2923.5 is the postponement of a foreclosure sale.  *Mabry v. Superior Court*, 185 Cal.App.4th 208, 212 (2010).  Accordingly, once a property has been sold at foreclosure, there is no remedy for a violation of § 2932.5.  *Davenport v. Litton Loan Servicing, LP*, 725 F.Supp.2d 862, 877-78 (N.D. Cal. 2010).

enterprise through a pattern of racketeering activity or the collection of an unlawful debt.  *(See* Doc. 1 at 31-34, ¶¶ 122-135).  To state a cognizable claim under RICO, a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's business or property."  *Living Designs, Inc. v. E.I. DuPont de Nemours Co.*, 431 F.3d 353, 361 (9th Cir. 2005); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985).

Defendants argue Plaintiffs fail to allege facts sufficient under Rule 9(b) to support their claim of a RICO violation.  (Doc. 14-1 at 16; Doc. 23 at 9, citing *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065-66 (9th Cir. 2004))  On the other hand, Plaintiffs assert that the RICO claim was "properly plead."  (Doc. 20 at 20.)  Plaintiffs assert that they "identified and alleged the conduct of Defendants, the documents that were created, that are fraudulent, that were placed in the United States Mail, the goal of the conspiracy – foreclosure (Complaint ¶ 124); the acts of other enterprise members (Complaint ¶ 125); the time period (Complaint ¶¶126 & 127) the knowledge of the wrongful and unlawful conduct, including other conduct pled in the Complaint and the mediums untilized (sic) to engage into interstate commerce (Complaint ¶¶ 128 & 129); and more."  (*Id.* at 19.)

### 1.    Enterprise

An "enterprise" is a "group of persons associated together for a common purpose of engaging in a course of conduct."  *United States v. Turkette*, 452 U.S. 576, 583 (1981). To plead the existence of an enterprise, Plaintiffs must allege "an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Id.; see also Odom v. Microsoft Corp.*, 486 F.3d 541, 552 (9th Cir. 2007).  Under RICO, an alleged "enterprise" requires an independent legal entity such as a corporation or an "association in fact" of individuals. 18 U.S.C. § 1961(4).

Here, Plaintiffs fail to allege facts that suggest the existence of an ongoing enterprise between Defendants.  Rather, the allegations of the complaint relate only to the foreclosure of their home.  Without more, Plaintiffs fail to allege facts supporting the existence of an enterprise under Rule 9.  *See Elliott v. Foufas,* 867 F.2d 877, 881 (5th Cir. 1989) ("to avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations, which establish the existence of an

1  enterprise); *Bergman v. Bank of Am.*, 2013 WL 5863057, *29-30 (N.D. Cal. Oct. 23, 2013) (collecting

2  cases and dismissing similar claims with prejudice).

3            2.      Pattern of Racketeering Activity

4          "Racketeering activity" is defined as any one of certain "generically specified criminal acts as

5  well as the commission of one of a number of listed predicate offenses." *Sosa v. Directv, Inc.*, 437 F.3d

6  923, 939 (9th Cir. 2006).  These activities include "any act or threat involving murder, kidnapping,

7  gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled

8  substance or listed chemical . . ., which is chargeable under State law and punishable by imprisonment

9  for more than one year." 18 U.S.C. § 1961(1)(A).  To establish the existence of a *pattern*, a plaintiff

10  must allege "at least two acts of racketeering activity, one of which occurred [after October 15, 1970]

11  and the last of which occurred within ten years (excluding any period of imprisonment) after the

12  commission of a prior act of racketeering activity.  18 U.S.C. § 1951(5).  Further, Plaintiffs must allege

13  "that the racketeering predicates are related [to each other] and that they amount to or pose a threat of

14  continued criminal activity."  *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239 (1989).

15          Plaintiffs allege Defendants engaged in the following "racketeering activities": (a) "mailed

16  mortgage statements to collect monies on loans not belonging to them;" (b) engaged in communications

17  over telephone lines to collect monies on loans not belong to them;" (c) "misrepresented to Plaintiff and

18  other borrowers that they own the loans;" (d) engaged in the foreclosure of Plaintiff's home while not

19  being the owner of the loan or having the authority to foreclose; and" (e) conspired with each other and

20  other wrongdoers to commit these wrongs."  (Doc. 1 at 32-33, ¶ 127.)  Moreover, Plaintiffs have failed

21  to allege facts to demonstrate a *pattern*, because the factual allegations of the complaint focus entirely

22  on the foreclosure of Plaintiffs' home.  *See*, e.*g., Gamboa v. Trustee Corps.*, 2009 WL 656285, at *5-6

23  (N.D. Cal. 2009) (finding that the plaintiffs failed to plead a RICO claim where the complaint is

24  "focused on one foreclosure sale" and does "not describe any other attempted foreclosure or loan

25  collection activities" but makes only "the conclusory allegation" of a pattern or practice); *Martinez v.

26  Quality Loan Service Corp.*, 2009 WL 586725, at *8 (C.D. Cal. 2009) (dismissing the RICO claim

27  where the plaintiff's factual allegations only addressed their foreclosure).

28          Importantly, as Defendants argue, the pleading standards of Rule 9(b) are applicable to

Plaintiffs' RICO claim because it is grounded on the fact of fraud.  *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991).  Furthermore, Rule 9(b) does not allow a plaintiff to merely lump multiple defendants together, but requires plaintiffs to inform each defendant separately of the allegations surrounding his alleged participation in the fraud. *United States v. Corinthian Colleges*, 655 F.3d 984, 997-98 (9th Cir. 2011).  As a result, this Court has dismissed similar RICO claims where the plaintiff failed, as Plaintiffs do here, to allege "any of the circumstances surrounding the alleged fraud, such as the dates the letters were sent, to whom the letters were sent, and who sent the letters on behalf of the Defendants."  *Heflebower v. JPMorgan Chase Bank, NA*, 2014 WL 897352 at *6 (E.D. Cal. Mar. 3, 2014); *see also Snell*, 2014 WL 325147, at *10 (dismissing a plaintiff's RICO claim where the complaint "contain[ed] general allegations of mail fraud, but fail[ed] to satisfy the heightened pleading requirement of Rule 9(b)").

### 3. Damages

As part of a RICO claim, plaintiff must allege a concrete financial loss as an injury.  *Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969, 975 (9th Cir. 2008); *see also Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1055 (9th Cir. 2008).  Generally, RICO damages are calculated by "monies paid out minus any value received."  *Negrete v. Allianz Life Ins. Co.*, 2011 WL 4852314, *8 (C.D. Cal. Oct. 13, 2011) (citing Jed S. Rakoff, *RICO Civil and Criminal Law and Strategy* § 4.02[2] at 4-6 (2007)).  Personal injury, including emotional distress, is not compensable under section 1964(c) of RICO, even if pecuniary loss is incurred from emotional distress.  *Berg v. First State Ins. Co.*, 915 F.2d 460, 464 (9th Cir. 1990).

Here, Plaintiffs allege that "as a direct and proximate result of Defendants' complained of acts, Plaintiff[s] ha[ve] suffered and continues to suffer damages, including but not limited to, monetary damages and emotional distress."  (Doc. 1 at 34, ¶ 132.)  The alleged harm is not concrete, and cannot be calculated by "monies paid out minus any value received."  *See Heflebower*, 2014 WL 897352 at *7. Further, Plaintiffs fail to support the conclusion that the damages incurred were the result of the alleged racketeering activity, rather than their default.  *See Rivac v. Ndex West LLC,* 2013 WL 3476659 at * 8 (N.D. Cal. July 10, 2013) (dismissing a similar RICO claim because the alleged damages arose from default, rather than the defendants' actions).

20

1    Because Plaintiffs have not alleged sufficient facts to support a RICO claim, Plaintiff's sixth

2    claim for relief should be **DISMISSED** without leave to amend.

3         **G.     Violations of the Fair Debt Collection Practices Act and Rosenthal Act**

4         Under the provisions of the Fair Debt Collection Practices Act ("FDCPA"), debt collectors are

5    prohibited "from making false or misleading representations and from engaging in various abusive and

6    unfair practices." *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995); *Donohue v. Quick Collect, Inc.*, 592

7    F.3d 1027, 1030 (9th Cir. 2010). California's Rosenthal Fair Debt Collection Practices Act ("Rosenthal

8    Act"), "like its federal counterpart, is designed to protect consumers from unfair and abusive debt

9    collection practices." *Robinson v. Managed Accounts Receivable Corp.*, 654 F.Supp.2d 1051, 1060

10   (C.D. Cal. 2009) (citing Cal. Civ. Code § 1788.1).  The provisions of FDCPA are incorporated into the

11   Rosenthal Act under Cal. Civ. Code § 1788.17.  Consequently, conduct by a debt collector that violates

12   the FDCPA violates Rosenthal Act as well.  *See Hosseinzadeh v. M.R.S. Assocs.*, 387 F. Supp. 2d 1104,

13   1118 (C.D. Cal. 2005); *Abels v. JBC Legal Group, P.C.*, 227 F.R.D. 541, 548 (N.D. Cal. 2005).

14        To establish a violation of the FDCPA and the Rosenthal Act, Plaintiffs must allege: (1) they

15   were consumers (2) who were the object of a collection activity arising from a consumer debt, and (3)

16   the defendant is a "debt collector," (4) who engaged in an act or omission prohibited by the FDCPA or

17   Rosenthal Act. *Miranda v. Law Office of D. Scott Carruthers*, 2011 WL 2037556, at *4 (E.D. Cal. May

18   23, 2011) (citing *Turner v. Cook*, 362 F.3d 1219, 1227-28 (9th Cir. 2004)).  Here, Plaintiffs allege

19   Defendants were debt collectors and their actions constituted violations of the fair debt collection acts

20   because "they threatened to take actions or did take actions not permitted by law, including but not

21   limited to calling Plaintiff and threatening to take his home, falsely stating the amount of a debt;

22   increasing the amount of a debt by including amounts that are not permitted by law or contract; and

23   using unfair and unconscionable means in an attempt to collect a debt."  (Doc. 1 at 35, ¶¶ 139, 143.)

24        1.     FDCPA

25        Defendants argue that Plaintiffs' claims fail because they do not meet the statutory definition of

26   "debt collector" and that they were not engaged in "debt collection activity."  (Doc. 23 at 10-11.)  The

27   FDCPA defines the term "debt collector" as including: (1) "any person who uses any instrumentality of

28   interstate commerce or the mails in any business the principal purpose of which is the collection of any

debts," and (2) any person "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another." 15 U.S.C. § 1692a(6).  To adequately plead this claim, a plaintiff must allege specific facts showing that a defendant is a "debt collector" within the meaning of the statute. *Schlegel v. Wells Fargo Bank*, NA, 720 F.3d 1204, 1208 (9th Cir. 2013). However, Plaintiffs are unable to carry this burden, because the FDCPA does not apply to actions taken in nonjudicial foreclosures.  *See Usher v. Chase Home Fin. LLC,* 2010 WL 4008496, *4 (E.D. Cal. 2010) (action taken in foreclosure "does not constitute collection of a debt within the meaning of the FDCPA"); *Arostegui v. Bank of Am.*, 2014 WL 1230762, at *6 (N.D. Cal. Mar. 21, 2014) (same). Accordingly, to the extent that Plaintiffs' seventh cause of action is based upon the FDCPA, it should be **DISMISSED** without leave to amend.

### 2.    Rosenthal Act

The Rosenthal Act definition of "debt collector" "broader than that contained in the FDCPA." *Izenberg v. ETS Servs., LLC*, 589 F. Supp.2d 1193, 1199 (C.D. Cal. 2008).  Under the Rosenthal Act, a "debt collector" is defined as "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." Cal. Civ. Code § 1788.2(c). "Thus, a mortgage servicer may be a 'debt collector' under the Rosenthal Act even if it is the original lender, whereas, such an entity would be excluded from the definition of debt collector under the federal act." *Reyes v. Wells Fargo Bank, N.A.*, 2011 WL 30759, at *19 (N.D. Cal. Jan. 3, 2011).

Here, Plaintiffs allege Defendants violated the Rosenthal Act by "calling . . . and threatening to take [their] home, falsely stating the amount of a debt; increasing the amount of debt by including amounts that are not permitted by law or contract; and using unfair and unconscionable means in an attempt to collect a debt."  (Doc. 1 at 35-36, ¶ 143.)  These general allegations are insufficient to give Defendants fair notice of the wrongful acts.   Further, to the extent Plaintiffs allege fraudulent activity by falsely stating the amount of the debt, the allegations are insufficient to meet the pleading standards of Rule 9(b).  Plaintiffs fail to allege which Defendant contacted them and when, who falsely stated the amount of debt and when, how the debt was increased, or what "unfair and unconscionable means" were used in the course of debt collection.  *See Jacobsen v. Balboa Arms Drive Trust*, 2011 WL 3328487 (S.D. Cal. Aug. 1, 2011) (finding the same allegations as those alleged here were "vague" and

1   did not meet the minimal pleading standards of Rule 8).  Accordingly, the Court recommends

2   Plaintiffs' claim for a violation of the Rosenthal Act be **DISMISSED** with leave to amend.

3         **H.     Slander of Title**

4         Slander of title "occurs when a person, without privilege to do so, publishes a false statement

5   that disparages title to property and causes pecuniary loss." *Truck Ins. Exchange v. Bennett*, 53

6   Cal.App.4th 75, 85 (1997).  Therefore, to state a claim for slander of title, Plaintiffs must allege: "(1) a

7   publication, (2) without privilege or justification, (3) falsity, and (4) direct pecuniary loss." *Sumner*

8   *Hill Homeowners' Assoc. v. Rio Mesa Holdings, LLC*, 205 Cal.App.4th 999, 1030 (2012).

9         Here, Plaintiffs allege that Defendants disparaged their title "by and through by and through

10  the preparing, posting, publishing and recording of the documents previously described herein,

11  including, but not limited to, the Notices of Default, Notice of Trustee's Sale, Substitution of Trustee,

12  and Trustee's Deed Upon Sale."  (Doc. 1 at 49, ¶ 229.)  Plaintiffs assert Defendants published the

13  documents "with the malicious intent" to injure Plaintiffs and deprive them of their "exclusive right,

14  title, and interest in the Property."  (*Id.*, ¶ 232.)  According to Plaintiffs, they have "incurred expenses,

15  including reasonable attorneys' fees, in order to clear title to the Property."  (*Id.*, ¶ 230.)

16        Significantly, however, non-judicial foreclosure documents are privileged communications,

17  unless the recordation was done with malice. *Kachlon v. Markowitz*, 168 Cal. App. 4th 316, 333

18  (2008); *see also Dubose v. Suntrust Mortg., Inc.,* 2012 WL 1376983, at *3 (N.D. Cal. Apr. 19, 2012)

19  (dismissing a slander of title claim because the recording of a notice of default, notice of trustee sale,

20  and substitution of trustee were privileged); *McFadden v. Deutsche Bank Nat'l Trust Co*., 2011 U.S.

21  Dist. LEXIS 91010, at *42 (E.D. Cal. Aug. 2011) (finding the plaintiffs' claim for slander of title

22  failed because the recording of the trustee's deed upon sale was "subject to a qualified privilege[]" and

23  the plaintiffs failed to allege facts supporting the conclusion that the recording was done with malice).

24  Plaintiffs fail to allege facts supporting the conclusion that Defendants acted with malice, such that the

25  "publication was motivated by hatred or ill will" or that Defendants "acted in reckless disregard of the

26  plaintiffs' rights."  *See Kachlon*, 168 Cal.App.4th at 336 (citing *Sanborn v. Chronicle Pub. Co.*, 18

27  Cal. 3d 406, 413, (1976)).  Furthermore, this Court has determined a slander of title claim cannot stand

28  upon the allegation that the defendants lacked authority to foreclose. *See, e.g., Lanini*, 2014 U.S. Dist.

23

1    LEXIS 47348 at *29-30) (dismissing the slander of title claim without leave to amend where the

2    plaintiffs based the claim on the allegations that the recordation was false and the defendant lacked

3    authority to foreclose).  Consequently, the Court finds that even if Plaintiff had standing, they fail to

4    state a claim for slander of title, and recommends that Plaintiffs' sixteenth cause of action be

5    **DISMISSED** without leave to amend.

6         **I.      Civil Conspiracy**

7              Civil conspiracy is "a legal doctrine that imposes liability on persons who, although not

8    actually committing a tort themselves, share with the immediate tortfeasors a common plan or design

9    in its perpetration."  *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510-11

10   (1994).  To state a claim for a civil conspiracy, a plaintiff must allege: "(1) the formation of a group of

11   two or more persons who agreed to a common plan or design to commit a tortious act; (2) a wrongful

12   act committed pursuant to the agreement; and (3) resulting damages." *City of Industry v. Fillmore*, 198

13   Cal.App.4th 191, 211-12 (2011).  Importantly, plaintiffs must plead a claim for civil conspiracy "with

14   particularity" when the object of the agreement is fraudulent, in compliance with Rule 9(b). *See Wasco*

15   *Prods. v. Southwall Techs., Inc.*, 435 F.3d 989, 990-92 (9th Cir. 2006).  The Ninth Circuit explained,

16   "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s]

17   plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each

18   defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v.*

19   *KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007).

20             Defendants argue, "Plaintiffs fail to provide specific facts regarding any alleged fraud or

21   conspiracy."  (Doc. 14-1 at 16.)  In response, Plaintiffs assert that "the elements and wrongful actions

22   of the conspiracy have been sufficiently alleged" because:

23             Plaintiffs have alleged the existence of a conspiracy to defraud borrowers by a scheme of
         false promises of loan modifications.  Plaintiffs have identified the co-conspirators.  The
24       actions taken in furtherance of the conspiracy are alleged as the cause of damages
         incurred by Plaintiffs.

25

26   (Doc. 20 at 19, citing Doc. 1 ¶¶235-240.)

27             In the complaint, Plaintiffs allege Defendants conspired together "to implement a scheme to

28   defraud and victimize Plaintiff[s] through . . . predatory lending practices and other unlawful acts."

                                                      24

1  (Doc. 1 at 50, ¶ 236.)  Further, Plaintiffs allege Defendants "committed acts in furtherance of the

2  conspiracy, and/or lent aid and encouragement to their co-conspirators and/or ratified and adopted the

3  acts of their co-conspirators."  (*Id.*, ¶ 238.)  These general allegations are insufficient to state a claim

4  for conspiracy under Rule 9(b).  Plaintiffs provide no specific factual allegations to support the

5  conclusion that Defendants entered into a conspiracy, and fail to identify specific actions taken by each

6  Defendant in furtherance of a conspiracy.  Accordingly, the Court recommends this claim be

7  **DISMISSED**.

8  **J.      Plaintiffs' Contract-Based Claims**

9  Plaintiffs allege Caliber is liable for a breach of contract and breach of the duty of good faith

10  and fair dealing related to the Servicer Participation Agreement and the Trial Payment Plan ("TPP").

11  (Doc. 1 at 36-40.)  In addition, Plaintiffs state a claim for promissory estoppel against Caliber for

12  representations made in the TPP.  (*Id.* at 40-41.)  Defendants argue that these causes of action must

13  fail for the following reasons:

14      [F]irst…there is no binding authority that plaintiffs are a third- party beneficiary to any
       agreements that Defendants may have had with the United States government. Second,
15      any agreement to modify the terms of the loan must be in writing, and since there is no
       writing the alleged loan modification violates the statute of frauds. Third, Plaintiffs'
16      do not state facts that they actually complied with the alleged HAMP agreement by
       continuing to make payments, and in fact allege that the purported loan modification was
17      contingent on a good faith payment, which they refused. [Citation.] Finally, the alleged
       contract was a mere negotiation, and not a final offer and acceptance of a loan
18      modification agreement, so there is no valid contract.

19  (Doc. 14-1 at 15.)

20  In response, Plaintiffs assert they are third-party beneficiaries to the HAMP loan modification

21  agreement, and that the Ninth Circuit has determined that a bank may be "required to . . . offer a

22  permanent modification."  (Doc 30 at 14-15, citing *Corvello v. Wells Fargo Bank, N.A.*, 728 F.3d 878,

23  885 (9th Cir. 2013.))

24      1.      HAMP background

25  Congress passed the Emergency Economic Stabilization Act, Pub. L. No. 110-343, 122 Stat.

26  3756 in 2008.  This included the Troubled Asset Relief Program "which required the Secretary of the

27  Treasury, among many other duties and powers, to 'implement a plan that seeks to maximize

28  assistance for homeowners and . . . encourage the servicers of the underlying mortgages . . . to take

advantage of . . . available programs to minimize foreclosures.'" *Corvello*, 728 F.3d at 880 (quoting

*Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 556 (7th Cir. 2012); 12 U.S.C. § 5219(a)).   In

response, the Treasury Department initiated the Home Affordable Modification Program ("HAMP")

"to incentivize banks to refinance mortgages of distressed homeowners so they could stay in their

homes." *Corvello*, 728 F.3d at 880.

       Home loan servicers such as Caliber signed a Servicer Participation Agreement, under which

"servicers agreed to identify homeowners who were in default or would likely soon be in default on

their mortgage payments, and to modify the loans of those eligible under the program." *Wigod*, 673

F.3d at 556.   Under the SPA, "servicers would receive a $1,000 payment for each permanent

modification, along with other incentives." *Id.*  Servicers were directed to perform loan modification

pursuant to "guidelines and procedures issued by the Treasury," and follow "any supplemental

documentation, instructions, bulletins, letters, directives, or other communications . . . issued by the

Treasury." *Id.*

       The Treasury set out the process for applying for and receiving loan modification in Treasury

Supplemental Directive 09-01 ("SD 09-01"). *See Corvello*, 728 F.3d at 880.  The Ninth Circuit

summarized the process as follows:

> First, borrowers supply information about their finances and their inability to pay their
> current mortgage to the servicer, and the servicer must evaluate whether the borrowers qualify
> for a loan modification. SD  09-01. The servicer computes modified mortgage payments on the
> basis of the borrowers' information. *Id.*
>
> For borrowers who appear eligible to participate in HAMP, the servicer then prepares a
> TPP.  The TPP requires borrowers to submit documentation to confirm the accuracy of their
> initial financial representations, and to make trial payments of the modified amount to the
> servicer. The servicer must use the documentation to "confirm that the borrower[s]" meet the
> eligibility criteria for a permanent modification. *Id.*
>
> In the step most critical to this litigation, the servicer then must report to the borrowers
> the results of the eligibility determinations. *Id.* If a borrower does not qualify for the HAMP
> program, the servicer must not only alert the borrower, but must consider alternatives. The
> servicer should "promptly communicate that [ineligibility] determination to the borrower in
> writing and consider the borrower for another foreclosure prevention alternative." *Id.* For
> borrowers who have made all their payments and whose representations remain accurate, the
> servicer must offer a permanent home loan modification. *Id.*

*Corvello*, 728 F.3d at 880-81.

///

2.      Private right of action

In general, as Defendants argue, courts have determined that HAMP does not authorize a private right of action against participating lenders.  *See, e.g., Dodd v. Fed. Home Loan Mortg. Corp.*, 2011 WL 6370032 at *12 (E.D. Cal. Dec. 19, 2011) ("there is no express or implied private right of action to sue lenders or loan servicers for violation of HAMP."); *Eisan v. Wells Fargo Bank*, 2014 WL 1794144 at *5 (N.D. Cal. May 6, 2014); *see also Bank of America, N.A. v. Roberts*, 217 Cal.App.4th 1386, 1399 (2013) (noting that HAMP "has been consistently construed to create no private rights or private causes of action on the part of borrowers").  Because there is no private right of action for a borrower for a breach of the Servicer Participation Agreement, the Court recommends Plaintiff's eighth claim for relief for breach of the SPA by Caliber be **DISMISSED** without leave to amend.

3.      Breach of the TPP

Recently, the Ninth Circuit held in *Corvello* that if borrowers "fulfilled all of their obligations under the TPP, and the loan servicer has failed to offer a permanent modification, the borrowers have valid claims for breach of the TPP agreement."  *Corvello*, 728 F.3d at 884 (citing *West v. JPMorgan Chase Bank, N.A.,* 214 Cal.App.4th 780 (4th Dist. 2013)).  Facts supporting a breach of an agreement, "like all essential elements of a breach of contract cause of action, must be pleaded with specificity." *Levy v. State Farm Mut. Auto. Ins. Co.*, 150 Cal.App. 4th 1, 5 (2007).

Plaintiffs allege that they entered a TPP with CitiMortgage, under which they made the required payments.  (Doc. 1 at 19, ¶¶ 48-49.)  However, CitiMortgage "failed to provide a loan modification and transferred the servicing rights to Defendant Caliber.  (*Id.* at 19, ¶ 49.)  Plaintiffs allege that "Caliber failed to honor the completed TPP and offer a permanent loan modification."  (*Id.*)  According to Plaintiffs, they submitted "at least three separate and complete loan modification packages" to Caliber in late 2010 and 2011, each of which was denied.  (*Id.* ¶¶ 46, 51.)

From the facts alleged, it is not clear that Plaintiffs had a TPP with Caliber.  Further, although Plaintiffs allege they made the payments required under the TPP, they do not allege that they fulfilled *all* of the obligations under the TPP with CitiMortgage.  The TPP was conditioned on being qualified for a HAMP loan, which was denied by Caliber.  Thus, the facts presented differ from those in *Corvello*, where the borrowers alleged they completed their TPP but Wells Fargo never told them

27

whether they qualified for a loan modification.  *See Corvello*, 728 F.3d at 881.  Here, as Plaintiffs

allege, Caliber denied loan modification on multiple occasions.

Moreover, Plaintiffs have not pled facts sufficient to support claim for a breach of the implied

covenant. "In California, the factual elements necessary to establish a breach of the covenant of good

faith and fair dealing are: (1) the parties entered into a contract; (2) the plaintiff fulfilled his obligations

under the contract; (3) any conditions precedent to the defendant's performance occurred; (4) the

defendant unfairly interfered with the plaintiff's rights to receive the benefits of the contract; and (5) the

plaintiff was harmed by the defendant's conduct." *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F.

Supp. 2d 952, 968 (N.D. Cal. 2010) (citing Judicial Council of California Civil Jury Instruction 325).

"Importantly, to state a claim for breach of the implied covenant of good faith and fair dealing, a

plaintiff *must identify the specific contractual provision that was frustrated*." *Plastino v. Wells Fargo

Bank*, 873 F. Supp. 2d 1179, 1191 (N.D. Cal. 2012) (emphasis added). As discussed above, it is not

clear that Plaintiffs had an agreement with Caliber, and Plaintiffs fail to identify a specific contractual

provision that was frustrated in the TPP.

Plaintiffs have not adequately pled a claim for a breach of the TPP or an implied covenant of

good faith and fair dealing.  Therefore, the Court recommends Plaintiffs' ninth claim for relief be

**DISMISSED** with leave to amend.

### 4.      Promissory Estoppel

Plaintiffs' tenth claim for relief is for promissory estoppel against Caliber.  (Doc. 1 at 40).

"Promissory estoppel applies whenever a promise which the promissor should reasonably expect to

induce action or forbearance on the part of the promisee or a third person and which does induce such

action or forbearance would result in an injustice if the promise were not enforced." *Lange v. TIG Ins.

Co.*, 68 Cal.App.4th 1179, 1185 (1998). To state a claim for promissory estoppel, a plaintiff must

allege: "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the

promise is made; (3) his reliance must be both reasonable and foreseeable; and (4) the party asserting

the estoppel must be injured by his reliance." *Laks v. Coast Fed. Sav. & Loan Assn.*, 60 Cal. App. 3d

885, 890 (1976).

Here, Plaintiffs allege that "Defendant Caliber, through its predecessor and itself, and by way of

its TPP Agreements, made representations to Plaintiff[s] that if [they] returned the TPP Agreements executed and with supporting documentation, and made the TPP payments, Plaintiff[s] would receive permanent HAMP modifications." (Doc. 1 at 40, ¶ 170.)  The allegation that Caliber and CitiMortgage made representations to Plaintiffs regarding the TPP is not "clear and unambiguous."  Plaintiffs fail to allege specific facts regarding promises that were made, and by whom. Because the facts alleged are insufficient to determine whether Plaintiffs may state a cognizable claim for promissory estoppel, the Court recommends the claim be **DISMISSED** with leave to amend. *See Alimena v. Vericrest Fin.*, 964 F.Supp.2d 1200, 1219 (E.D. Cal. 2013) (dismissing a promissory estoppel claim based upon a TPP because the plaintiffs did not allege facts sufficient to determine the entities' involvement in making a promise embodied in the TPP).

### K.    Claim for Violation of California Business and Professions Code § 17200

Plaintiffs' eighteenth cause of act ion is for a violation of California's Unfair Competition Law, as set forth in Cal. Bus. & Prof. Code § 17200, et. seq.  (Doc. 1 at 51.)  Defendants contend that the claim fails because Plaintiffs "stat[e] vague generalizations and references to the conduct alleged in their other causes of action."  (Doc. 14-1 at 17.)  In addition, Defendants argue that the claim fails because "Plaintiffs predicate their UCL claim on the same allegations and theories which fail to state any other viable claim," and UCL claim must be based on another substantive cause of action.  (*Id.*, citing *Krantz v. BT Visual Images*, 89 Cal.App.4th 164, 178 (2001)).

Under §17200, unfair competition includes any "unlawful, unfair, or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  Therefore, there are three prongs under which a claim may be established under §17200.  *Daro v. Superior Court*, 151 Cal.App.4th 1079, 1093 (2007) ("Because section 17200 is written in the disjunctive, a business act or practice need only meet one of the three criteria—unlawful, unfair, *or* fraudulent—to be considered unfair competition"); *Lozano v. AT&T Wireless Servs.*, 504 F.3d 718, 731 (9th Cir. 2007) ("[e]ach prong . . . is a separate and distinct theory of liability").  Further, as Defendants observe, a claim under § 17200 must rest on a violation of another law.  *Farmers Ins. Exch. v. Superior Court*, 2 Cal.4th 377, 383, 6 Cal.Rptr.2d 487, 826 P.2d 730 (1992).  Here, Plaintiffs alleged "Defendants committed unlawful, unfair, and/or fraudulent business practices," and incorporated all other prior factual allegations in the complaint by reference.

29

1    (Doc. 1 at 51, ¶¶ 242-43.)   Opposing dismissal of the claim, Plaintiffs assert they alleged sufficient

2    facts to satisfy all three prongs of § 17200.  (Doc. 20 at 20-22.)

3                        1.    Unlawful act or practice

4            Actions prohibited by § 17200 include "any practices forbidden by law, be it civil or criminal,

5    federal, state, or municipal, statutory, regulatory, or court-made." *Saunders v. Superior Court*, 27

6    Cal.App.4th 832, 838-39, 33 Cal.Rptr.2d 438 (1994).  Thus, the "unlawful" prong requires an

7    underlying violation of law.  *Krantz v. BT Visual Images*, 89 Cal.App.4th 164, 178, 107 Cal.Rptr.2d

8    209 (2001).  Here, as detailed above, Plaintiffs have not alleged facts sufficient to support a finding

9    that Defendants violated underlying laws.

10                       2.    Unfair act or practice

11           A claim under the "unfair" prong requires "conduct threatening incipient violation of antitrust

12   laws, or violates the policy or spirit of those laws . . . , or otherwise significantly threatens or harms

13   competition." *Cal-Tech Communications v, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th

14   163, 187, 83 Cal.Rptr.2d 548, 973 P.2d 527 (1999).  In this case, Plaintiffs have neither alleged a

15   violation of antitrust laws, nor alleged threatened or harmed competition.

16                       3.    Fraudulent act or practice

17           A "fraudulent" act under § 17200 is "one which is likely to deceive the public," and "may be

18   based on misrepresentations . . . which are untrue, and also those which may be accurate on some level,

19   but will nonetheless tend to mislead or deceive." *McKell v. Washington Mutual, Inc.*, 142 Cal.App.4th

20   1457, 1474, 49 Cal.Rptr.3d 227 (2006).  Thus, the term "fraudulent" under §17200 "does not refer to

21   the common law tort of fraud," *Puentes v. Wells Fargo Home Mortg., Inc.*, 160 Cal.App.4th 638, 645

22   (Ct. App. 2008), but still requires allegations that the misrepresentation was directly related to injurious

23   conduct, and that the claimant actually relied on the alleged misrepresentation.  *In re Tobacco II Cases*,

24   46 Cal.4th 298, 36-27 (2009).  Nevertheless, claims based upon the "fraudulent" prong of §17200

25   remain subject to the heightened pleading requirements of Rule 9(b).  *Kearns*, 567 F.3d at 1124-25;

26   *Meridian Project Sys.*, 404 F.Supp.2d at 1219.  Because Plaintiffs failed to plead the circumstances

27   surrounding fraud with particularity, their claim for fraudulent practices under § 17200 fails as well.

28

1    Plaintiffs fail to allege facts sufficient to support a claim that Defendants acted in an "unlawful,

2    unfair, or fraudulent business act or practice" in violation of Cal. Bus. & Prof. Code § 17200.  Thus,

3    the Court recommends Plaintiffs' eighteenth cause of action be **DISMISSED** with leave to amend.

4        **L.     Accounting**

5        Plaintiffs seek an accounting against Caliber and Vericrest, alleging that "some or all of the

6    monies paid have been misapplied."  (Doc. 1 at 54, ¶ 265.)  Defendants assert that this cause of action

7    "fails as a matter of law."  (Doc. 14-1 at 18.)

8        A claim for accounting "is a proceeding in equity for the purpose of obtaining a judicial

9    settlement of the accounts of the parties in which proceeding the court will adjudicate the amount due,

10   administer full relief and render complete justice." *Verdier v. Superior Court*, 88 Cal.App.2d 527, 531

11   (1948).  An accounting cause of action is equitable and may be sought where the accounts are so

12   complicated that an ordinary legal action demanding a fixed sum is impracticable. *Civic Western Corp.*

13   *v. Zila Industries, Inc.*, 66 Cal.App.3d 1, 14 (1977).

14       Importantly, a party's "right to an accounting is derivative; it must be based on other claims."

15   *Janis v. California State Lottery Com.*, 68 Cal.App.4th 824, 833-834, 80 Cal.Rptr.2d 549 (1998).  Here,

16   Plaintiffs' complaint lacks the factual support to support an accounting, particularly in light of the

17   dismissal of the claims which may give rise to an accounting.  Moreover, as the parties owing money,

18   Plaintiffs have "no right to seek an accounting." *See Quinteros v. Aurora Loan Services*, 740 F. Supp.

19   2d 1163, 1170 (E.D. Cal. 2010) (explaining that a borrower, "as the party owing money, not the party

20   owed money, has no right to seek an accounting").  Thus, the Court recommends the claim accounting

21   be **DISMISSED** without leave to amend.

22       **M.     Declaratory Relief**

23       Plaintiffs assert that "[a] judicial declaration is necessary and appropriate at this time under the

24   circumstances in order that [Plaintiffs'] may ascertain [their] title to the Property, [their] obligations

25   and to whom those obligations, if any, are due."  (Doc. 1 at 53, ¶ 260.)  Accordingly, Plaintiffs seek

26   Plaintiffs seek "a judicial determination of the validity of the Defendant Vericrest's acquisition of the

27   Note and Deed of Trust against the Property and related non- judicial foreclosure procedures and

28   manner that Defendants have employed them," as well as a determination "as to the validity of whether

31

Defendant Vericrest is a real party in interest vis-à-vis as the mortgagee of the Property." (*Id.*, ¶¶ 258-59.) Defendants argue that Plaintiffs' request for declaratory relief "fails as a matter of law" because they fail to satisfy the test under the Declaratory Judgment Act.  (Doc. 14-1 at 15.)

The Declaratory Judgment Act allows a federal court to "declare the rights and other legal relations" of parties to a "case of actual controversy."  28 U.S.C. § 2201; *Spokane Indian Tribe v. United States*, 972 F.2d 1090, 1091 (9th Cir. 1992). The Court has the discretion to determine whether to entertain an action for declaratory relief, because the Declaratory Judgment Act "gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so." *Public Affairs Assoc. v. Rickover*, 369 U.S. 111, 112 (1962); *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1998).  A declaratory relief claim operates "prospectively," not to redress past wrongs. *Britz Fertilizers, Inc. v. Bayer Corp.*, 665 F.Supp.2d 1142, 1173 (E.D. Cal. 2009).

The Ninth Circuit determined that "[d]eclaratory relief is appropriate (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Eureka Fed. Sav. & Loan Assoc. v. American Cas. Co.,* 873 F.2d 229, 231 (9th Cir. 1989). To determine whether a controversy invokes declaratory relief, the Court must determine whether there is a "substantial controversy, between parties having adverse legal rights, or sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

As an equitable remedy, declaratory relief is "dependent upon a substantive basis for liability" and has "no separate viability" if all other causes of action are barred. *Glue-Fold, Inc. v. Slautterback Corp.*, 82 Cal.App.4th 1018, 1023, n. 3, 98 Cal.Rptr.2d 661 (2000).  Defendants contend that "because the contentions underlying Plaintiffs' declaratory relief request are without basis in fact or law, they cannot establish an actual present controversy that justifies this remedy." (Doc. 14-1 at 15.)  Plaintiffs respond to Defendants' assertion that they cannot establish a present controversy by asserting there is a controversy regarding "[t]he right of any Defendant to foreclose on the Property." (Doc. 20 at 18.)  However, as discussed above, Plaintiffs claims related to wrongful foreclosure fail for lack of standing and their inability to allege prejudice.  Consequently, declaratory relief as to the rights of Defendants

to foreclose is not appropriate, and the Court recommends Plaintiffs' twentieth claim be **DISMISSED** without leave to amend.

### N.   Requests for Relief Characterized as Causes of Action

Plaintiffs assert "claims" to set aside trustee sale (fourteenth claim), to cancel the trustee's deed (fifteenth claim), imposition of constructive trust (nineteenth claim).  However, these are remedies, not independent claims.  *See Glue-Fold*, 82 Cal.App.4th t at1023 n. 3 (a constructive trust is "not an independent cause of action but merely a type of remedy"); *Sirrium v. Bank of Am., N.A.,* 2012 WL 2450715 at *2 (E.D. Cal. June 25, 2012) ("cancellation of a trustee's deed is an equitable remedy); *Capodiece v. Wells Fargo Bank*, 2013 WL 1962310  at *7 (N.D. Cal. May 10, 2013) (noting the plaintiffs' requests for injunctive relief and for an order setting aside the trustee's sale "cannot be independent claims [because] they are types of remedies").  Accordingly, the Court recommends the fourteenth, fifteenth, and nineteenth causes of action be **DISMISSED** without leave to amend.

## VI.   Findings and Recommendations

Based upon the foregoing, **IT IS HEREBY RECOMMENDED** that Defendants' motion to dismiss be **GRANTED IN PART** as follows:

1.   Plaintiffs' claims for cancellation of instruments (Count 1); quiet title (Count 2); wrongful foreclosure (Counts 3, 4, and 5); RICO violation (Count 6); breach of contract based upon the Servicer Participation Agreement (Count 7), Fair Debt Collection Practices Act (portion of Count 8), slander of title (Count 16), and civil conspiracy (Count 17) be **DISMISSED without leave to amend**;

2.   Plaintiffs' claims for a violation of the Rosenthal Act (Count 8); breach of contract related to the Trial Payment Plan (Count 9); promissory estoppel (Count 10); fraud (Counts 11, 12, and 13); and violation of Cal. Bus. Prof. Code § 17200 (Count 18) be **DISMISSED with leave to amend**; and

3.   Plaintiffs be granted 21 days after the date of service of the Order addressing these Findings and Recommendations to file a First Amended Complaint.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local

Rules of Practice for the United States District Court, Eastern District of California. Within 14 days after being served with these Findings and Recommendations, any party may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response thereto shall be filed within 7 days after service of the Objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **July 9, 2014**                          **/s/ Jennifer L. Thurston**

UNITED STATES MAGISTRATE JUDGE