1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                   FOR THE EASTERN DISTRICT OF CALIFORNIA

8

| | |
|---|---|
| 9  MANUEL LAZO; ORALIA LAZO F/K/A ORIALIA PABLO, | 1:13-cv-2015  AWI JLT |
| 10 | |
|      Plaintiffs, | MEMORANDUM OPINION AND |
| 11 | ORDER ON DEFENDANTS' MOTION |
|      vs. | TO DISMISS |
| 12 | |
| 13  CALIBER HOME LOANS, INC.; | |
| 14  VERICREST OPPORTUNITY LOAN TRUST 2011-NPL1; SUMMIT | Doc. # 31 |
| 15  MANAGEMENT COMPANY, LLC A/K/A SUMMIT MANAGEMENT COMPANY, | |
| 16  LLC, an unknown entity; and DOES 1 through 100, inclusive, | |
| 17 | |
| 18       Defendants. | |

19

20          This is an action for damages and injunctive relief by plaintiffs Manuel and Oralia Lazo

21  ("Plaintiffs") against defendants Caliber Home Loans, Inc. ("Caliber"), Vericrest Opportunity

22  Loan Trust 2011-NPL1 ("Vericrest") and Summit Management Company ("Summit")

23  (collectively, "Defendants").  The currently-operative First Amended Complaint ("FAC") was

24  filed on September 8, 2014.  The instant motion to dismiss was filed on September 25, 2014.

25  Federal subject matter jurisdiction exists pursuant to 28 U.S.C. § 1331.  Venue is proper in this

26  court.

27  //

28  //

## PROCEDURAL HISTORY

Plaintiffs' original complaint was filed on December 10, 2013, and alleged a total of twenty-one claims for relief.  Defendants' motion to dismiss the complaint was referred to the Magistrate Judge, who issued Findings and Recommendations ("F&R's") on July 9, 2014.  Doc. # 25.  The F&R's recommended that Plaintiffs' claims for quiet title, wrongful foreclosure, RICO, breach of contract based on the Servicer Participation Agreement, Fair Debt Collection Practices act violation, slander of title, and civil conspiracy be dismissed with prejudice.  The F&R's also recommended that claims alleged in the original complaint for violation of California's Rosenthal Act, breach of contract related to the Trial Payment Plan, promissory estoppel, three counts of fraud and violation of California's Fair Business Practices Act, Cal. Bus. Prof. Code § 17200 be dismissed with leave to amend.  The F&R's were adopted in full on July 9, 2014.  Doc. # 26.  The currently-operative First Amended Complaint ("FAC") was filed by Plaintiffs on September 8, 2014.  Defendants' instant motion to dismiss the FAC was filed on September 25, 2014.  No opposition to Defendants' motion to dismiss has been filed as of this writing.

## FACTUAL BACKGROUND

The factual background for this action was reviewed in considerable detail in the Magistrate Judge's F&R's and that factual review is incorporated hereby reference.  Basically, Plaintiffs allege two areas of conduct by Defendants that give rise to the claims alleged in the FAC.  First, Plaintiffs allege facts that challenge the legality and validity of Defendants' status as servicers of the mortgage entered into by Plaintiffs and challenge the legality of Defendants' efforts to enforce the terms of the promissory note by commencing foreclosure proceedings. Second, Plaintiffs allege facts that, taken together, challenge the legality of Defendants conduct in permitting Plaintiffs to apply for a loan modification and participate in a period of trial payments and, after the trial period was successfully completed, denying Plaintiffs a permanent restructuring of their home mortgage.  The seven claims for relief alleged in the FAC are identical to the seven claims for relief pled in the original complaint that were dismissed with

leave to amend pursuant to the Magistrate Judge's F&R's.  So far as the court can tell, the factual background portion of the FAC is identical to that alleged in the original complaint.  To the extent the factual basis for the seven claims alleged in the FAC has been supplemented in Plaintiffs' FAC, the supplementation has occurred in the restatement of the claims themselves. Additional facts, if any, that have been alleged in the FAC in connection with specific claims will be set forth in the following discussions of Defendants' motion to dismiss those claims.

## JUDICIAL NOTICE

Defendants request that the court take judicial notice of a number of documents that have previously been judicially noticed by the Magistrate Judge's F&R's.  These documents include:

1.  Deed of trust which was recorded in the official records of Kern County as Instrument No. 0205303251;

2.  Assignment of Deed of Trust recorded in the official records of Kern County as Instrument No. 020609970;

3.  Letter to Plaintiffs dated June 11, 2008, attached as an exhibit to Plaintiffs' complaint.

4.  Letter to Plaintiffs dated October 20. 2010, attached as an exhibit to Plaintiffs' complaint.

5.  Notice of Default recorded in the official records of Kern County as Instrument No. 0211055277;

6.  Notice of Default recorded in the official records of Kern County as Instrument No. 0211061330;

7.  Notice of Trustee's Sale recorded in the official records of Kern County as Instrument No. 02111043032;

8.  Trustee's Deed Upon Sale recorded in the official records of Kern County as Instrument No. 00211130634;

9.  Substitution of Trustee recorded in the official records of Kern County as Instrument No. 211104031.

As noted in the Magistrate Judge's F&Rs, "The Court may take judicial notice of a fact that 'is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily [be] determined from sources whose accuracy cannot be reasonably be questioned.'  Fed. R. Evid. 201.  In addition, the Court also may take judicial notice of material incorporated by reference into the complaint without converting the motion to dismiss into a motion for summary judgment.  [Citations.]"  Doc. # 25 at 6:26-7:5.  Because the same documents have been previously judicially noticed and because there are no objections to the request for judicial notice, Defendants' request for judicial notice is GRANTED for the reasons set forth in the Magistrate Judge's F&R's.

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure can be based on the failure to allege a cognizable legal theory or the failure to allege sufficient facts under a cognizable legal theory.  Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir.1984).  To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must set forth factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("Twombly").  While a court considering a motion to dismiss must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), and must construe the pleading in the light most favorable to the party opposing the motion, and resolve factual disputes in the pleader's favor, Jenkins v. McKeithen, 395 U.S. 411, 421, reh'g denied, 396 U.S. 869 (1969), the allegations must be factual in nature.  See Twombly, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").  The pleading standard set by Rule 8 of the Federal Rules of Civil Procedure "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) ("Iqbal").

The Ninth Circuit follows the methodological approach set forth in Iqbal for the assessment of a plaintiff's complaint:

> "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."

Moss v. U.S. Secret Service, 572 F.3d 962, 970 (9th Cir. 2009) (quoting Iqbal, 129 S.Ct. at 1950).

## DISCUSSION

**I.  General Considerations**

As noted above Plaintiffs' seven claims for relief allege those claims based on two separate categories of alleged misconduct by Defendants; (1) attempting to collect on a mortgage where the assignments of rights under the Deed of Trust are alleged to have been unlawful or incomplete, and (2) failing to finalize and make permanent a modified payment schedule pursuant to the Home Affordable Modification Act ("HAMP") where Plaintiffs successfully completed a Trial Payment Period ("TPP") and submitted all requested information for a permanent loan modification.  Before undertaking analysis of Defendants' motion to dismiss with regard to Plaintiffs' individual claims, the court will first address the issue of the extent to which liability can be alleged under each of the two aforementioned theories.

**A.  *Unlawful, Ineffective or False Transfer of Beneficial and/or Trustee Rights -- Standing***

Courts in this circuit have consistently held that "borrowers who were not parties to the assignment of their deed—and whose rights were not affected by it—lacked standing to challenge the assignment's validity because they had not alleged a concrete and particularized injury that is fairly traceable to the challenged assignment."  Marques v. Fed. Home Loan Mortg. Corp., No. 12–cv–1873–IEG, 2012 WL 6091412, at *4 (S.D.Cal. Dec.6, 2012.  Stated another way, a party that executes a mortgage deed of trust and promissory note is obliged under those

documents to make payments in an amount and on the schedule specified in the documents and to pay all contractually agreed to fees and penalties but lacks standing to challenge *who* is entitled to receive the payments or *who* is empowered to enforce the terms of the documents.

The "tender rule" is similarly a rule of standing where the borrower seeks to challenge the legitimacy of a foreclosure proceeding instituted pursuant to California's comprehensive non-judicial foreclosure statute.  As Defendants correctly note, in order to have standing to challenge any proceedings related to the foreclosure sale or the issuance of deed after sale, Plaintiffs must allege tender of the full undisputed amount of the loan.  Karlsen v. American Savings & Loan Ass'n, 15 Cal.App.3d 117-118 (1971).  As Defendants correctly note, "tender" in this context means the demonstration of the present ability and willingness to pay the entire amount due.  See id. at 118-120 (complicated scheme that depended on lenders willingness to release part of the property and that certain entities would be willing to refinance the balance was not sufficient to constitute "tender").  This requirement extends to all causes of action arising directly from an allegedly unlawful foreclosure proceeding.  Id. at 117.

Thus, to the extent Plaintiffs' FAC attempts to allege claims arising from alleged technical irregularities in the assignment of rights or benefits under the Deed of Trust or Promissory Note, or claims based on enforcement of the terms of those documents, including the foreclosure and sale of the property, Plaintiffs' ability to assert such claims is barred for lack of standing except to the extent Plaintiffs have alleged tender.  Plaintiffs have not alleged tender in their FAC.  Rather, they allege their willingness and ability to abide by the terms of what they presume would be the payment schedule under the continuation of the payment schedule set up during the Trial Period Plan ("TPP") that was instituted on February 2, 2010.  This falls fall short of full "tender" as required by Karlsen.

Although Plaintiffs have filed no opposition to the instant motion to dismiss, the court notes that the FAC alleges in some detail the facts supporting their contention that, due to several technical deficiencies in the several transfers and assignments of rights under the Deed of Trust, the Trustee's notice of sale, sale after foreclosure and issuance of the Trustee's Deed Upon Sale

were all void, rather than voidable.  The court presumes that it would be Plaintiffs' intention to rely here, as they did in their opposition to the motion to dismiss the original complaint, on the holding of the California Fifth District Court of Appeal in <u>Glaski v. Bank of America</u>, 218 Cal.App.4th 1079 (5th Dist. 2013).  In <u>Glaski</u>, the California appellate court held that, while California law is clear that a borrower lacks standing to challenge a trustee's sale after foreclosure where the sale is voidable, a technical defect in the transfer of the trust under state law may make the sale void rather than voidable; and in such a situation the borrower may have standing to challenge the foreclosure sale based on the failure of authority to foreclose to successfully be transferred to the foreclosing trustee.  <u>See</u> <u>id.</u> at 1094-1095.

The Magistrate Judge's F&R's contain a through examination of the applicability of <u>Glaski</u> to challenges in federal courts to foreclosure sales where the foreclosure sale was undertaken by a successor trustee or trustee's nominee following a technically deficient transfer or assignment.  The extensive analysis in the F&R's notes that "a majority of California courts have declined to follow *Glaski*, and have instead followed the Fourth District Court of Appeals' conclusion that a borrower is 'an unrelated third party to the alleged securitization and any other subsequent transfers of the beneficial interest under [a] promissory note' and as such 'lacks standing to enforce any agreements.' *Jenkins v. J.P. Morgan Chase Bank, N.A.*, 216 Cal.App.4th 497, 515 (2013)."  Doc. # 25 at 10:10-13.  This court has reviewed the Magistrate Judge's discussion in the F&R's, the cited authority and such authority as this court finds appropriate, and concludes that the Magistrate Judge's determination that Plaintiffs lack standing to challenge the transfer of beneficial interest in the Deed of Trust or Note and are therefore required to allege full tender is correct is all respects.  This court also finds that Plaintiffs' attempt to overcome their failure to allege tender by bolstering the facts supporting their contention of ineffective or false transfer of beneficial interest in the trust deed is unavailing.

### B.  Claims for Violation of HAMP

As the Magistrate Judge's F&R's correctly noted, "courts have determined that HAMP does not authorize a private right of action against participating lenders."  Doc. # 25 at 27:2-3

(citing <u>Dodd v. Fed. Home Loan Mortg. Corp.</u>, 2011 WL 6370032 (E.D. Cal. 2011) at *12).  To date, the only claim arising from HAMP that has been recognized by the Ninth Circuit is a claim for breach of the agreement between a borrower and lender to participate in a TPP under HAMP. In <u>Corvello v. Wells Fargo Bank</u>, 728 F.3d 878 (9th Cir. 2013), the appellate court reversed the district court's grant of a motion to dismiss a claim for breach where the borrower had fulfilled all obligations set forth in the lender-drafted TPP agreement and the lender failed to perform its obligation to permanently restructure the loan.  <u>Id.</u> at 884-885.  The holding in <u>Corvello</u> is intensely fact-dependent and this court has been careful to not apply its holding where the facts are distinguishable.  <u>See</u>, <u>e.g.</u>, <u>Sholiay v. Fed. Nat'l Mortgage Ass'n.</u>, 2013 WL 5569988 (E.D. Cal. Oct. 2013) at *5 (noting that the holding in <u>Corvello</u> is dependent on the existence of a TPP, and does not apply where no TPP was offered).  In short, the holding in <u>Corvello</u>, stands for the proposition that, while HAMP authorizes no private right of action, a TPP Agreement offered pursuant to HAMP is a contract, and a party to that contract may sue for breach if the lender violates a term contained within the four corners of the TPP.

In dismissing Plaintiffs' claim for breach of the TPP as alleged in the original complaint, the Magistrate Judge observed:

> Plaintiffs allege that they entered a TPP with CitiMortgage, under which they made the required payments.  [Citation.]  However, CitiMortgage "failed to provide a loan modification and transferred the servicing rights to Defendant Caliber.  [Citation.]  Plaintiffs allege that "Caliber failed to honor the completed TPP and offer a permanent loan modification."  According to Plaintiffs, [Plaintiffs] submitted "at least three separate and complete loan modification packages" to Caliber in late 2010 and 2011, each of which was denied.
>
> From the facts alleged, it is not clear that Plaintiffs had a TPP with Caliber.  Further, although Plaintiffs allege they made the payments required under the TPP, they do not allege that they fulfilled *all* of the obligations under the TPP with CitiMortgage.  The TPP was conditioned on being qualified for a HAMP loan, which was denied by Caliber.  Thus, the facts presented differ from those in *Corvello*, where the borrowers alleged they completed their TPP but Wells Fargo never told them whether they qualified for a loan modification.  *See Corvello* 728 F.3d at 881.

Doc. # 25 at 27:18-28:2.

The facts alleged by Plaintiffs in their FAC remain troublingly ambiguous with regard to Defendants' conduct with regard to the TPP, the following facts are clarified:

1. In their claim for breach, Plaintiffs make clear that the basis for their claim for relief is the TPP dated February 1, 2010, which is attached to Plaintiff's FAC as Exhibit 21.

2. The TPP at issue was offered by CitiMortgage and signed by CitiMortgage's representative on January 23, 2010.  The TPP specified that the trial period would require three monthly payments of $791.74, each with payment due on the first day of each month beginning February 1, 2010.

3. The TPP defined the "Trial Period" as "commencing on the Trial Period Effective Date [which is specified as February 2, 2010], and ending on the earlier of: (i) the first day of the month following the month in which the last Trial Period Payment is due (the "Modification Effective Date") or (ii) termination of this Plan."  Doc 30-1 at 64.

4. The TPP further provides, in pertinent part, that:

> F.  If prior to the Modification Effective Date, (i) the Lender does not provide me a fully executed copy of this Plan and the Modification Agreement; (ii) I have not make the Trial Period payments required under Section 2 of this Plan; (iii) the Lender Determines that any of my representations in Section 1 were not true and correct as of the date I signed this Plan or are no longer true and correct at any time during the Trial Period; or (iv) I do not provide all information and documentation required by Lender, the Loan Documents will not be modified and this Plan will terminate. In this event, the Lender will have all of the rights and remedies provided by the Loan Documents, and any payment I make under this Plan shall be applied to amounts I owe under the Load Documents and shall not be refunded to me; and

> G.  I understand that this Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed.  I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if the Lender determines that I do not qualify or if I fail to meet any 0one of the requirements under this Plan.

Doc, # 30-1 at 65.

5.  Pursuant to the terms of the TPP, the Modification Effective Date was May 1, 2010.
    Plaintiffs do not allege that they received a "fully executed" Modification Agreement by
    that date.

6.  In the second paragraph, the TPP also stated, "I understand that after I sign and return
    two copies of this [Trial Period] Plan to the Lender, the Lender will send me a signed
    copy of this Plan if I qualify for the Offer *or will send me written notice that I do not
    qualify for the Offer*." Doc. # 30-1 at 63 (italics added).

7.  Defendant Vericrest Financial, Inc. provided notice to Plaintiffs on October 20, 2010,
    that the servicing of Plaintiffs' loan had been transferred from CitiMortgage to Vericrest.
    The notice informed Plaintiffs that the transfer would not affect "any term of condition of
    the mortgage instruments." Doc. # 30 at 7:7:17-18.

8.  On February 21, 2011, Plaintiffs received from Vericrest what appears to be a proposal
    for modification of the loan.  Among other provisions, the communication from Vericrest
    stated Plaintiffs' "request for modification will be approved, if Vericrest receives from
    you the following **on or before March 3, 2011**: (1) A good faith payment in the form of
    **certified funds** in the amount of **$6,120.20**, which will be applied to your loan as a
    payment upon completion of the modification." Doc. # 30-1 at 68 (bold and underlines
    in original).  The "Modification Agreement" is attached to the communication from
    Vericrest.

9.  The reference in the communication from Vericrest to "Your Request for a modification"
    is ambiguous in that there is no reference to any prior TPP Agreement or payments made
    thereunder, nor is there any reference to procedures under HAMP or Plaintiffs' prior

dealings with CitiMortgage.  In their FAC, Plaintiff's claim for breach alleges that Plaintiffs "did engage in subsequent loan modification submission, also wrongly denied," apparently in addition to the TPP.  The court presumes that the Letter from Vericrest represents the outcome of a "subsequent loan modification submission."  Doc. # 30 at 28:10-11.

10. Plaintiffs do not allege they executed the Modification Agreement offered by Vericrest and contend that the required "good faith payment" is unlawful under HAMP.

Of some significance, the TPP at issue in this action appears identical in every respect to the TPP at issue in <u>Corvello</u>.  The facts alleged by Plaintiffs differ from those alleged in <u>Corvello</u> in one significant particular.  In <u>Corvello</u>, the TTP was originated by the lender (Wells Fargo Bank) and the party that was sued by the borrowers was Wells Fargo Bank, whom the plaintiffs accused of breach because the bank had not affirmatively informed the plaintiffs that they did not qualify for permanent loan modification nor had the bank offered a permanent modification. <u>See</u> <u>Corvello</u>, 728 F.3d at 883 (rejecting Wells Fargo's contention that they could discharge their duties under the TPP by merely failing to return an executed Modification Agreement).  In <u>Corvello</u> the time period between the Modification Effective Date and the institution of the plaintiffs' actions for breach is not stated.  It is clear, however, that in <u>Corvello</u>, unlike the case at bar, there was no intervening transfer of servicing or beneficial rights.

As noted above, the TTP terminated by its own terms on the Modification Effective Date, which, in Plaintiffs' case, was May 1, 2010.  The court notes that Plaintiffs allege they were not notified in writing of the denial of the modification application by CitiMortgage at any time. Assuming, for purposes of this analysis, that CitiMortgage did not affirmatively notify Plaintiffs in writing that they did not qualify for loan modification, CitiMortgage would have been in breach of the TPP as of that date.    Plaintiffs allege that CitiMortgage represented to Plaintiffs

that the determination of Plaintiff's Modification Application rested with loan servicer,

Vericrest.  Based on the foregoing, it is this court's opinion that the TPP was breached, if at all,

by CitiMortgage, a non-party to this case; and that the breach occurred before the transfer of

servicing rights to Vericrest some six months after the termination of the Trial Period.

   With the foregoing in mind, the court will proceed to decide whether Defendants are entitled

to dismissal of Plaintiffs' individual claims against them.

## II.  Plaintiffs' Individual Claims for Relief

   As an initial matter, the court notes that the Magistrate Judge's F&R's considered the

contentions of the parties as to whether the heightened pleading standards under F.R.C.P. 9(b)

are applicable to Plaintiffs' claims.  The Magistrate Judge concluded that the heightened

pleading standards are applicable to Plaintiffs' claims under the Rosenthal Act, and for violation

of Cal. Bus. Code § 17200, as well as for Plaintiffs' fraud claims.  This court incorporates the

Magistrate Judge's determination here by reference as to those claims as alleged in Plaintiffs'

FAC.  As the F&R's noted "[t]o avoid dismissal for failure to meet the heightened pleading

standards under Rule 9(b). '[a] complaint would need to state the time, place, and specific

content to the false representations as well as the identities of the parties to the

misrepresentation.'  *Edwards v. Martin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004).  'For

corporate defendants a plaintiff must allege the names of the persons who made the allegedly

fraudulent representations, their authority to speak, to whom they spoke, what they sake or

wrote, and when it was said or written.'  *Flowers v. Wells Fargo Bank, N.A.*, 2012 WL 2748650

at *6 (N.D. Cal. July 13, 2011)"  Doc. # 25 at 8:14-20.

### A.  *Violation of the Rosenthal Fair Debt Collection Practices Act*

   The Magistrate Judge's F&R's noted the following in recommending dismissal of the

claim with leave to amend:

Plaintiffs allege Defendants violated the Rosenthal Act by "calling . . . and threatening to take [their] home, falsely stating the amount of debt; increasing the amount of debt by including amounts that are not permitted by law or contract; and using unfair and unconscionably means in an attempt to collect a debt."  (Doc. # 1 at 35-36 ¶ 143.)  These general allegations are insufficient to give Defendants fair notice of the wrongful acts.  Further, to the extent Plaintiffs allege fraudulent activity by falsely stating the amount of the debt, the allegations are insufficient to meet the pleading standards of rule 9(b).  Plaintiffs fail to allege which Defendant contacted them and when, who falsely stated the amount of debt and when, how the debt was increased, or what "unfair and unconscionable means" were used in the course of debt collection."

Doc. # 25 at 22:19-27.

Plaintiffs' FAC adds detail to the allegations originally made by alleging that Defendant Caliber used unlawful means to collect on the loan "when it attempted to collect on the original amount due under the promissory note [. . .] after completed modification packets had been submitted despite representing that it would not collect or foreclose until a determination of eligibility was completed or the amounts of claim to be due were validated."  Doc. # 30 at 226-10.  It is apparently Plaintiffs' contention that Defendant Caliber is liable for misrepresentations made when "Caliber's predecessor provided a [HAMP TPP] with an effective date of February 1, 2010, [. . .] which Plaintiff[s] fully complied with, [. . .] but then resumed collection activity and continued that collection activity through the filing of the Complaint."  Doc. # 30 at 22:11-15.  Plaintiffs' allegations with regard to the unlawful acts of Defendant Vericrest are the same as those alleged against Caliber, except that Plaintiffs' allege that Vericrest also made false statements by claiming "daily damages of $50 through its agent Randall Naiman when he did not have the right to make such a demand."  Doc. # 30 at 25:3-5.

To the extent Plaintiffs' claim under the Rosenthal Act can be interpreted as based on statements made in connection with the HAMP TPP, that claim fails because there is no evidence that the named Defendants were parties to any plan.  As the court determined above, the TPP that Plaintiffs did enter into was terminated, whether by breach or by its own terms, as

of May 1, 2010.  Plaintiff's reference to Defendants' "predecessor" (CitiMortgage) is unavailing because the plan had terminated at least five months before servicing rights passed from CitiMortgage to the assignee.  Plaintiff has presented no legal basis for the court to pass liability for a breach that was committed, if at all, by Defendants' predecessor on to the Defendants.

To the extent Plaintiffs' claim for violation of the Rosenthal Act can be interpreted to be based on the illegality of the transfer of servicing authority to the Defendants or on the actual conduct of the Defendants in the calls or representations that were made to Plaintiffs, such claim fails because, as noted in the F&R's, Plaintiffs lack standing to challenge the assignment or assignments of servicing rights and, to the extent Plaintiffs' claim rests on the conduct of Defendants during the calls, Plaintiffs' FAC displays the same lack of specificity as was evident in the original complaint.

The court concludes Defendants are entitled to the dismissal of Plaintiffs' claim under the Rosenthal Act.

### B. Plaintiffs' Claim for Breach of Contract

Plaintiffs second claim for relief alleges a claim for breach of contract and breach of the duty of good faith and fair dealing with respect to the TPP agreement.  With regard to the breach of contract portion of the claim, the F&R's observed that "it is not clear that Plaintiffs had a TPP with Caliber."  Doc. # 25 at 27:24-25.  As discussed above, the court has concluded that, based on the documents appended to the FAC and based on the allegations contained within the FAC, the TPP was begun *and concluded* while non-party CitiMortgage was servicing the loan.  There is no evidence of a separate TPP agreement with any of the named Defendants and there is no legal basis presented to support the proposition that a TPP contract that was begun *and concluded* by a non-party can be the basis for liability against the assignee of the loan after the termination of the contract Trial Period.  Whether CitiMortgage breached the terms of the TPP is

not before the court as CitiMortgage is not a defendant in this action.  Further, Plaintiffs allege

no factual basis to find that the Loan Modification Offer that was extended by Defendant

Vericrest was extended pursuant to the TPP with CitiMortgage other than the mere assertion that

CitiMortgage was the "predecessor" of the named Defendants.  As noted above, Plaintiffs have

failed to establish that there was a TPP agreement between the named Defendants and Plaintiffs.

Plaintiffs' claim of breach of contract therefore fails.

Plaintiffs' claim for breach of implied covenant of good faith and fair dealing fails for

essentially the same reason.  As noted in the F&R's, the first element of a claim of breach of the

implied covenant is that "'the parties entered into a contract.'"  Doc. # 25 at 28:5 (quoting

Rosenfeld v. JP Morgan Chase Bank, N.A., 732 F.Supp.2d 952, 968 (N.D. Cal. 2012).  As

discussed above, Plaintiffs have failed to show that they and Defendants entered into a contract.

The court concludes Defendants are entitled to dismissal of Plaintiffs' second claim for

relief.

### C.  Plaintiffs' Claim for Promissory Estoppel

Plaintiffs' third claim for relief alleges promissory estoppel against Defendant Caliber.

The Magistrate Judge noted the elements of promissory estoppel as "'(1) a promise that is clear

and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3)

reliance [that is] reasonable and foreseeable; and (4) the party asserting the estoppel must be

injured by his reliance.'  Lacks v. Coast Fed. Sav. & Loan Assn. 60 Cal.App.3d 885, 890

(1976)."  Doc. # 25 at 28:24-27.  The F&R's granted Defendants' motion to dismiss because

"[t]he allegation that Caliber and CitiMortgage made representations to Plaintiffs regarding the

TPP is not "clear and unambiguous."  Id. at 29:4.  The claim against Caliber as expressed in the

FAC differs from the claim alleged in the original complaint only in that identifies the TPP

agreement between CitiMortgage and Plaintiffs as the legal basis for the claim.  The FAC

alleges:

> Defendant Caliber, through its predecessor and itself, and by way of its February 1, 2010, TPP Agreement (Exhibit "21") made representations to Plaintiff that if Plaintiff returned the TPP Agreement executed and with supporting documentation, and made the TPP payments, and otherwise fully complied with all condition, Plaintiff would receive permanent HAMP modification."

Doc. # 30 at 29:28-30:4.

As the court has noted, the term "Defendant Caliber through its predecessor and itself" is at best legally ambiguous and factually unsupported.  There is no allegation, so far as the court can determine, of a separate set of promises made by Defendant Caliber.  Also as noted, there is no legal support for the legal proposition that any responsibility under HAMP passed from CitiMortage to Caliber after the term of the TPP had expired.  Plaintiffs allege that they submitted three sets of modification packages to Caliber, but there is no allegation the court can find of a separate promise made to Plaintiffs by Caliber, much less the actual terms of such promise.  The court therefore finds Defendants are entitled to dismissal of Plaintiffs' third claim for relief.

### D. Plaintiffs' Claims for Intentional Fraud

Plaintiffs fourth, fifth and sixth claims for relief allege intentional fraud.  The fourth claim for relief is alleged against Defendant Caliber for false or fraudulent assignment of the trust to Vericrest on October 6, 2011.  Plaintiffs' fifth claim for relief is alleged against Defendants Summit and Caliber for issuance of a Notice of Default on April 28, 2011, that violated the terms of Cal. Civ. Code § 2923.5 in that the Defendants "knew that there had been not [sic] purported assignment of the Property to Vericrest that would allow Defendant Summit and Defendant Caliber to make claims on behalf of the purported beneficiary, Defendant Vericrest."  Doc. 30 at 34:5-7.  Plaintiffs' sixth claim for relief alleges intentional fraud against Defendants Summit and Caliber based on the second notice of default which was filed on May

11, 2011.  Plaintiffs contend the May 11 notice of default was fraudulent for the same reason as the April 28 notice.

The Magistrate Judge's F&R's discussed the requirement for tender with regard to any claim arising from a foreclosure, but did not specifically comment on the requirement for tender with regard to Plaintiffs' fraud claims.  Each of Plaintiffs fraud claims is based on the contention that rights under the Trust Deed and Promissory Noted were not effectively passed from Vericrest to Wells Fargo Bank because of defects in the assignment including irregularities with both required signatures and notarization of the signatures.  Plaintiffs state they "relied upon the assignment as valid and did not take action to undo the fraudulent assignment earlier, continued to communicate with Defendants about the loan modifications believing the Defendants had the property authority to deal with Plaintiff under the assignment, and Plaintiff [sec] spent countless hours working toward securing loss mitigation from Defendants to no avail."  Doc. # 30 at 32:17-21.  Plaintiffs fifth and sixth claims for relief similarly allege that there was reliance because Plaintiff went along with the authority asserted in the notices of default even though the Defendants lacked authority to declare default because of the defective transfer.

The court notes that Plaintiffs' contentions regarding the assignment of rights of foreclosure are somewhat confusing and difficult to follow in the exhibits.  However, it is clear that Plaintiffs' allegations of fraud are all ultimately predicated on the contention that somewhere along the line of transfers and assignments, the right to issue a notice of foreclosure and to carry out the subsequent foreclosure sale was not legally transferred because of issues relating to the identities of the individuals signing the documents, when they were signed, and when the signatures were authenticated.  As discussed above, a borrower lacks standing to challenge the validity of intermediate transfers of authority under a note or deed of trust because the borrower is not a party to the transfer.  In the context of Plaintiffs' claims of fraud, the legal

fact of Plaintiffs' lack of standing to challenge the validity of the transfers or assignments means Plaintiffs cannot allege reliance on their validity.  Stated another way, Plaintiffs cannot allege they relied on the validity of Defendants' transfer or assignment of rights because such reliance is immaterial to any harm to Plaintiff.  Plaintiffs cannot claim they were harmed because they "did not take action to undo the fraudulent transfer earlier," because they could not have challenged the fraudulent transfer in any event because they lacked standing.  Because each of Plaintiffs' claims for fraud are predicated on the same contention – that the Defendants lacked legal authority to issue notices of foreclosure or deeds of sale upon foreclosure – the claims each fail because Plaintiffs could not have reasonably relied on Defendants' false claims of authority under the Note or Deed of Trust.  Defendants are therefore entitled to dismissal of Plaintiffs fourth, fifth and sixth claims for relief.

### E.  Plaintiff's Claim for Violation of California's Unfair Competition Law

California's Unfair Competition Law ("UCL"), Cal. Bus & Prof. Code § 17200, prohibits unfair business practices that are "unlawful, unfair, or fraudulent."  Id.  As the F&R's noted, the categories of unfair competition are listed as disjunctive so a violation of the UCL may be found were a business practice is included within one of the three categories.  See Daro v. Superior Court, 151 Cal.App.4th 1079, 1093 (2007).  Plaintiffs allege Defendants' conduct was unlawful in that it violated the Rosenthal Act.  Since the court has found that the FAC does not adequately allege a violation of the Rosenthal Act against Defendants, Plaintiffs' allegation of violation the UCL under the unlawful prong fails.

Plaintiffs allege five areas of conduct in which Defendants violated the UCL under the "unfair" prong.  See Doc. # 30 at ¶ 153.  This allegation seems somewhat odd in that the bulk of the conduct alleged by Plaintiffs appears to fit more easily within the deceptive or fraudulent prong than under the unfair prong which, as the F&R's note, "requires 'conduct threatening

incipient violation of antitrust laws, or violates the policy or spirit of those laws . . . , or otherwise significantly threatens or harms competition.' Cal.Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., 20 Cal.4th 163, 187 (1999). " Doc. # 25 at 30:11-14.  The court has examined the alleged conduct and frankly is at a loss to see any connection between the conduct and any "threat or harm" to competition.

Presuming for the sake of completeness that Plaintiffs meant to allege the five categories set forth in Paragraph 153 under the "fraudulent" prong of the UCL, the court concludes that the claims nonetheless fail to state a violation.  Plaintiffs' first two examples of allegedly violative conduct pertain to the fact that Plaintiffs were denied a permanent loan modification despite having fulfilled all the requirements of HAMP application and the TPP.  As discussed above, these examples of conduct may or may not allege a violation of California's UCL, but Plaintiffs have not alleged the claim against CitiMortgage, the entity that committed the alleged acts and was, so far as the court can tell, solely responsible for conduct that may have breached the TPP Agreement.

Plaintiffs' third and fourth examples of conduct in alleged violation of the UCL refer to Plaintiffs' allegations of recording fraudulent notices of default and failing to "properly consider[ ] applicable trial payment plans before demanding or collecting amounts due."  Doc. # 30 at 38:27-28.  As discussed above, Plaintiffs lack standing to challenge the authority of Defendants to act under the Deed of Trust or Promissory Note because they have not alleged tender.  Similarly, the court had determined that Plaintiffs have failed to allege that the named Defendants were under any duty to "consider applicable trial payment plans" because the named Defendants were not parties to the TPP Agreement.

Plaintiffs' fifth and final example of Defendant conduct in violation of the UCL is indecipherable.  It states that Defendants' conduct was unfair because Defendants:

> Failed to investigate claims of loss mitigation approvals or defects with
> the foreclosing documents or appropriateness of the parties foreclosing
> and in doing so such activity provides the basis for an "unfair" inquiry and
> could deceive the public because it place [sic] burdensome requirements
> on Plaintiff and the public that served no purpose but to provide for the
> unlawful foreclosure activity to continue.

Doc. # 30 at 39:1-6.

The court has read this paragraph several times and remains unclear as to what conduct is alleged to have been either unfair or deceptive.  It appears to the court that the foregoing paragraph is a more convoluted restatement of prior allegations that Defendants wrongfully denied Plaintiffs' HAMP application following their successful completion of the TPP and wasted Plaintiffs' time by repetitively requesting borrower information for a loan modification that would not be granted.  The conduct alleged fails to state a claim for relief under the UCL because it does not allege conduct that is unlawful, deceitful or unfair within the meaning of the UCL.

The court concludes that Defendants are entitled to dismissal of all claims in Plaintiffs' FAC.  Defendants urge the court to dismiss the claims with prejudice because further amendment would be futile.  Plaintiffs, as noted, have filed no opposition.  As the court has discussed, Plaintiffs lack standing to assert any claim predicated on alleged defects in the transfers or assignments of rights under the Deed of Trust or the Promissory Note.  That being the case, the only claims Plaintiffs could foreseeably assert are claims relating to breach of the TPP.  Whether Plaintiffs could, at this point, assert a claim for breach of the TPP against CitiMortgage is not before the court and the court will decline to speculate on the matter.  The court must presume that, had there been any basis in law or fact for the contention that CitiMortgage passed along the responsibility to perform under an agreement that had expired by its own terms months before there was an assignment of rights under the Note or Deed of Trust, Plaintiffs would have made such law or facts explicit.  They have not.  The court therefore

concludes that the Plaintiffs' FAC should be dismissed with prejudice as to the named Defendants.

THEREFORE, for the reasons discussed above, it is hereby ORDERED that Plaintiffs' FAC is hereby DISMISSED in its entirety as to all Defendants with prejudice.  The clerk of the court shall CLOSE the case.

IT IS SO ORDERED.

Dated:   February 11, 2015     _____

SENIOR  DISTRICT  JUDGE